UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

Friedrichs Harris, Administrator of the
Estate of Evan M. Harris, deceased,

    Plaintiff,

v.                                                                    Civil Action No. 2:16-cv-46
                                                                      Judge Bailey

Q & A Associates, Inc.
Angela Shockley, Individually,
Keith Bishop, Individually,
Matthew Shockley, Individually,
Sandy Schmiedeknecht, Individually, and,
Tammy Robbins, Individually,

    Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS
<u>RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION</u>**

      Now Comes Friedrichs Harris, Administrator of the Estate of Evan M. Harris, by and through his counsel, David A. Sims, and Law Offices of David A. Sims, PLLC and does hereby offer this Memorandum of Law in Support of his Response to the Defendants' Motion to Compel Binding Arbitration:

**I.     <u>STATEMENT OF FACTS</u>**

      Q & A Associates, Inc. was established as a for-profit facility in Davis, West Virginia, which was purportedly created to assist young adults to transition into adulthood. In response to numerous lawsuits against providers in this "troubled teen" industry, a majority of them have turned to requiring arbitration instead of letting persons redress their complaints in court. Q & A Associates, Inc. is not any different. It has inserted an arbitration clause into a document that is titled <u>Contract, Medical Authorization, Release, and Consent Agreements</u>. **Exhibit A**. Q & A Associates, Inc. is not a healthcare facility, nor is it licensed to

provide medical care of any kind. Q & A Associates, Inc. is not a mental health facility, nor is it licensed to provide mental healthcare services of any kind. Q & A Associates, Inc. is not licensed by any entity of the state or federal government. Q & A Associates, Inc. has structured itself to avoid being regulated in the State of West Virginia.

In November of 2015, Q & A Associates, Inc. offered three programs, Applewood Transitions, The Journey WV and Cabin Mountain Living to persons like Evan M. Harris. Just prior to Evan Harris's acceptance into The Journey WV program, Q & A Associates, Inc.'s personnel required him to undergo a complete psychological evaluation. **Exhibit B**. Kevin Fenstermacher, Ph.D. completed the evaluation and made it very clear in his report that Evan M. Harris was cognitively functioning on a borderline level and that he was mentally ill. The psychological evaluation revealed a number of other medical conditions and psychiatric disorders that Evan M. Harris, all of which limited his ability to comprehend and understand even his own surroundings.

In response to the Motion to Compel Arbitration, Plaintiff offers the affidavit of Evan M. Harris's treating physician, Paul G. Pelts, M.D. **Exhibit C**. Dr. Pelts concluded that based upon his education, training and experience, as well as many years of exposure to Evan M. Harris as his treating psychiatrist, that Evan lacked the intellectual capacity and emotional maturity to understand the meaning of the words on **Exhibit A** and lacked the capacity to enter into any legal documents. Paul G. Pelts, M.D. also confirmed that Evan M. Harris was mentally ill, with his diagnosis of Bipolar Disorder I and other psychiatric disorders.

We as a society owe it to our mentally ill persons to protect them. This Court has the opportunity to do just that by denying the Defendants' Motion to Compel Arbitration and let Plaintiff proceed with his Complaint for Damages in federal court. If we do not protect our mentally ill persons, who will? Binding them to arbitration when they are not capable of

understanding what they have signed is a disservice to those who are in need of our protection.

As this Court is aware, nearly one year ago today, on November 19, 2015, Evan M. Harris came to Davis, West Virginia to participate in The Journey WV program. On his second day there, November 20, 2015, after being separated from his father, Friedrichs Harris, Evan printed his name on **Exhibit A**. Due to Evan M. Harris's cognitive and mental disabilities, he was operating at a level of a young teen, and with a mental illness, both of which were well-known by the officers and employees of Q & A Associates, Inc. Evan M. Harris had to have been at his most vulnerable state: in new surroundings, without his parents, upon whom he relied for everything; in Davis, West Virginia, which for Evan was the middle of nowhere; and, in response to the Defendants' request, he was presented with **Exhibit A**.

This Court will recognize that Evan M. Harris did not even understand that he was to sign **Exhibit A** as he merely printed his name on the document. Defendants did not bother to sign it either, nor is there a place for any of them to sign. Did the Defendants really intend to bind anyone to **Exhibit A**? If so, why is it not signed by any of them? Clearly, there is nothing in the Defendants' motion to compel arbitration that it was explained to him or that he understood what he was signing. It is clear from Evan Harris's comments in the weeks following that he did not understand what he had signed. The Defendants note in their own records:

1. On 11/26/15, "GJ" wrote: "I explained one morning when he woke up late that he had missed breakfast and his first reaction was telling me his mom was going to sue me for not giving him his meds...". **Exhibit D**.[1]

2. On 12/1/15, Tammy Robbins wrote: "It was reported Evan, who wanted to be called Ev, has been disrespectful, claiming if he had to participate in chores or

---

[1] Evan threatened suit because his mother, Kathleen Harris, is an attorney in Louisiana. His father, Friedrichs Harris, is a medical doctor practicing in the field of nephrology.

3

>   do something he felt he didn't have to, then he would call his parents or have staff sued." **Exhibit E**.

It is clear from the Defendants other writings that Evan M. Harris was not capable of following along with the Life Skills booklet. **Exhibit F**.

After Friedrichs Harris filed suit, Defendants asked for and received extensions to file a responsive pleading in the case. Subsequently, the Defendants filed their Answer and a few days later, filed an Amended Answer. In the Amended Answer, they assert that an arbitration clause exists in the documents given to Evan M. Harris; that he signed it; and, that this Court should send this case to binding arbitration. **Exhibit A** does not mention that arbitration of disputes against its employees for individual wrongful conduct is governed by its provisions, because clearly they are not governed by it. If this Court does order binding arbitration, there will be arbitration of some of the disputes, but not all of them. It is clear that nonsignatory parties to an arbitration agreement are not bound by it. "A court may not direct a nonsignatory to an agreement containing an arbitration clause to participate in an arbitration proceeding…". State ex rel. United Asphalt Suppliers, Inc. v. Sanders, 204 W. Va. 23, 25, 511 S.E.2d 134, 136 (1998). A signatory to an arbitration agreement cannot require a non-signatory to arbitrate unless the non-signatory is bound under some traditional theory of contract and agency law. The five traditional theories under which a signatory to an arbitration agreement may bind a non-signatory are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel, none of which exist in this case. Chesapeake Appalachia, L.L.C. v. Hickman, 236 W. Va. 421, 781 S.E.2d 198, 203 (2015). Consequently, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute…." First Options of Chicago, Inc. v. Kaplan, 514

U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).[2] When persons played no role in the negotiation, procurement or signing of an agreement to binding arbitration, they are not subject to it. Chesapeake Appalachia, L.L.C. v. Hickman, 236 W. Va. 421, 439, 781 S.E.2d 198, 216 (2015). The Defendants do not even suggest in their motion that all of them are committed to binding arbitration. Finally, this Court should recognize that no one from Q & A even bothered to sign it, how can Evan M. Harris be bound to an agreement that is unsigned by one of those seeking to enforce it?

## II.   DISCUSSION OF LAW

As this Court is aware, the Federal Arbitration Act does not compel this Court to stay or dismiss this action and send it to binding arbitration because there is no valid agreement. There was no offer and acceptance, consideration or a capacity to contract. To be valid, "an arbitration agreement must conform to the rules governing contracts, generally.... [T]he subject Arbitration Agreement must have (1) competent parties; (2) legal subject matter; (3) valuable consideration; and (4) mutual assent.... Absent any one of these elements, the Arbitration Agreement is invalid." State ex rel. AMFM, LLC v. King, 230 W.Va. 471, ––––, 740 S.E.2d 66, 73 (2013); State ex rel. U-Haul Co. of W. Virginia v. Zakaib, 232 W. Va. 432, 439, 752 S.E.2d 586, 593 (2013). These basic contract principles prohibit the enforcement of the binding arbitration clause contained in **Exhibit A**. Evan M. Harris lacked capacity to enter into it, thus it is not enforceable due to the doctrine of unconscionability.

---

[2] Friedrichs Harris did not agree to submit the Estate of Evan M. Harris's claims to binding arbitration. Nor was he ever asked to sign **Exhibit A** despite the fact that he and his wife were the individuals paying for Evan's participation in the program.

A.   **FEDERAL ARBITRATION ACT GENERALLY**:

The FAA was enacted in 1925 in response to widespread judicial hostility to arbitration agreements. Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 581, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008). The FAA provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It "requires courts to enforce the bargain of the parties to arbitrate." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In this instance, there was no bargained for agreement to arbitrate anything that is contained in the Plaintiff's Complaint for Damages.

Despite the clarity with which federal courts have addressed the issue of arbitration, the fact that there is an arbitration clause on a document that Evan Harris printed "Ev Harris" does not mean this Court is required to compel arbitration. **Exhibit A**. As Justice Ketchum wrote in State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders, 228 W. Va. 125, 129, 717 S.E.2d 909, 913 (2011), "…courts of this State are not hostile to arbitration or to adhesion contracts. We are hostile toward contracts of adhesion that are unconscionable and rely upon arbitration as an artifice to defraud a weaker party of rights clearly provided by the common law or statute."[3] Section 2 of the Act contains two parts: "the first part holds that written arbitration agreements affecting interstate commerce are 'valid, irrevocable, and enforceable,' but the second part is a 'savings clause' that allows courts to invalidate those arbitration

---

[3] Evan Harris was certainly taken advantage of: he was away from his parents; it was his second day at the facility; he had no way home; and, the Defendants had a psychological evaluation that states he was on the borderline of cognitive functioning.

agreements using general contract principles." State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders, supra, *133, 917. "Nothing in the Federal Arbitration Act, 9 U.S.C. § 2, overrides normal rules of contract interpretation. Generally applicable contract defenses—such as laches, estoppel, waiver, fraud, duress, or unconscionability—may be applied to invalidate an arbitration agreement." Id. Even the U.S. Supreme Court has said: "Section 2's saving clause permits agreements to be invalidated by 'generally applicable contract defenses,' but not by defenses that apply only to arbitration or derive their meaning from the fact that an agreement to arbitrate is at issue." Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902. Pp. 1745 – 1746 (1996).

Where a party alleges that the arbitration provision was unconscionable or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract. Bd. of Ed. of Berkeley Cty. v. W. Harley Miller, Inc., 160 W. Va. 473, 473–74, 236 S.E.2d 439, 440–41 (1977).[4]

    **B.**    **PROCEDURES TO BE FOLLOWED WHEN MOTION TO COMPEL IS FILED:**

As this Court is aware, when a motion to compel arbitration is filed in a trial court, the FAA requires this Court to determine (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement. Syl. Pt. 2, State ex rel. TD Ameritrade, Inc. v.

---

[4] Clearly Evan M. Harris was not capable of entering into a legal contract of any kind. He lacked the ability to do so. The arbitration provision was not bargained for and Evan did not know what he was printing his name to when he did so.

7

Kaufman, 225 W.Va. 250, 692 S.E.2d 293 (2010). Whether an arbitration agreement was validly formed, and whether the claims maintained by the plaintiff fall within the scope of the agreement, are evaluated under state law principles of contract formation. State ex rel. Richmond Am. Homes of W. Virginia, Inc. v. Sanders, supra, *134, *918. As noted above, the final phrase of § 2 permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract" to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Associates, Inc. v. Casarotto, supra; see also Perry v. Thomas, 482 U.S. 483, 492–493, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987).

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir.1991). Evan Harris's father denies the existence of a binding contract to arbitrate this dispute because of the issues of conscionability and upon basic contract principles. "[E]ven though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." Arrants v. Buck, 130 F.3d 636, 640 (4th Cir.1997).

### C. STANDARD OF REVIEW:

This Court is aware that: "[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." Shaffer v. ACS Government Servs., Inc., 321 F.Supp.2d 682, 683 (D.Md.2004). Nonetheless, "[c]ourts have deemed a motion seeking to compel arbitration as a factual attack as it asserts that a provision

8

of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims." Shea v. BBVA Compass Bancshares, Inc., No. 1:12–cv–23324–KMM, 2013 WL 869526, at *2 (S.D.Fla. Mar. 7, 2013) (quoting Bell v. Atl. Trucking Co., No. 3:09–cv–406–J–32MCR, 2009 WL 4730564, at *3 (M.D.Fla. Dec. 7, 2009)). It is clear that this Court must consider factual arguments and documents outside of the pleadings to address the Motion. As such, the Court should treat the Motion under Rule 12(b)(1) as a factual attack on this Court's jurisdiction, " 'apply the standard applicable to a motion for summary judgment," and "consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Richmond, Fredericksburg & Potomac R.R. Co., 945 F.2d at 768; see also Minter v. Freeway Food, Inc., No. 103CV00882, 2004 WL 735047, at *2 (M.D.N.C. Apr. 2, 2004). ("Decisions in other circuits have uniformly held that '[i]n the context of motions to compel arbitration brought under the Federal Arbitration Act ..., 9 U.S.C. § 4 (2000), courts apply a standard similar to that applicable to a motion for summary judgment.'" (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir.2003)))." U.S. ex rel. TBI Investments, Inc. v. BrooAlexa, LLC, 119 F. Supp. 3d 512, 523–24 (S.D.W. Va. 2015).

      D.    **T**HERE IS NO **C**ONTRACT **U**PON WHICH TO **F**ORCE **B**INDING **A**RBITRATION:

As this Court has seen from reviewing the document that Defendants contend is an agreement to submit their disputes to binding arbitration, it is not a contract. The document is not signed by anyone who is a party to this lawsuit. It is not part of a larger multipage agreement, which bears the agreement of the parties, it is a hodgepodge of things that the Defendants wanted Evan Harris to agree to without permitting him the opportunity to understand them. This Court should reject **Exhibit A** and permit these parties to move

9

forward in this litigation. To do otherwise, this Court will be ignoring the protections society generally affords those who are not capable of protecting themselves.

There is no mention of any consideration in the document that Plaintiff contends is a contract with an arbitration clause. Clearly, Evan M. Harris lacked capacity to validly enter into any agreements, including **Exhibit A**. Defendants knew that Evan Harris lacked capacity because they had the benefit of the psychological evaluation that was performed by Kevin Fenstermacher, Ph.D. They also had the benefit of Sandy Schmiedeknecht's observation that Evan Harris could not follow the simple readings from his life skills book. They had the benefit of their own notes that Evan was threatening to sue, within days of printing his name on **Exhibit A**. Yet, these same people want to require Evan Harris to submit his claims to binding arbitration instead of letting his family redress their claims in federal court where the case belongs.

The fundamentals of a legal contract are competent parties, legal subject matter, valuable consideration and mutual assent. There can be no contract if there is one of these essential elements upon which the minds of the parties are not in agreement. See e.g. Sturm v. Parish, 1 W.Va. 125, 144 (1865). A "parole contract or promise without consideration is void, is too well established to require any comment." Id. "Parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication." Daimler Chrysler Corp. v. Franklin, 814 N.E.2d 281 (Ind.Ct.App.2004) (citing Showboat Marina Casino P'ship v. Tonn & Blank Constr., 790 N.E.2d 595 (Ind.Ct.App.2003)). A Severance Agreement and General Release did not require a dispute over exercising stock options by a former employee to be submitted to arbitration. State ex rel. City Holding Co. v. Kaufman, 216 W. Va. 594, 598, 609 S.E.2d 855, 859 (2004).

E. **THE CLAUSES OF EXHIBIT A ARE UNCONSCIONABLE.**

In this case, there are at most three clauses which are relevant for this Court's consideration in the alleged contract: one is in the form of a pre-injury release of all claims, which is unconscionable on its face given the circumstances; the second is an agreement to waive one's constitutional right to be free from unlawful search and seizures; and, the third clause is the one Defendants contend requires binding arbitration. These clauses are unconscionable on their face. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Brown v. Genesis Healthcare Corp., 229 W. Va. 382, 386, 729 S.E.2d 217, 221 (2012).

   i. **ANTICIPATORY RELEASE CLAUSE**: At this point in time, these Defendants have not attempted to utilize the first clause in **Exhibit A** to shield themselves from liability. However, because this clause exits in the document, this Court can use its invalidity as a rationale for not enforcing any of the clauses in it. This Court should examine the clause with close scrutiny. "If a party to any pre-dispute contract was to assert a contractual right to avoid liability for their negligent conduct, then we would give the transaction careful examination." Brown ex rel. Brown v. Genesis Healthcare Corp., 228 W. Va. 646, 687, 724 S.E.2d 250, 291 (2011), cert. granted, judgment vacated sub nom. Marmet Health Care Ctr., Inc. v. Brown, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012). Earlier, the same court held that a general clause in a pre-injury exculpatory agreement or anticipatory release "purporting to exempt a defendant from all liability for any future loss or damage will not be construed to include the loss or damage resulting from the defendant's intentional or reckless misconduct or gross negligence, unless

the circumstances clearly indicate that such was the plaintiff's intention.[5] Similarly, a general clause in an exculpatory agreement or anticipatory release exempting the defendant from all liability for any future negligence will not be construed to include intentional or reckless misconduct or gross negligence, unless such intention clearly appears from the circumstances. Restatement (Second) of Torts § 496B comment d (1963, 1964). See also Prosser and Keeton on the Law of Torts § 68, at 483–84 (W. Keeton 5th ed. 1984); 3 S. Speiser, C. Krause & A. Gans, The American Law of Torts § 12:48, at 642 (1986); 57A Am.Jur.2d Negligence § 65 (1989)." Murphy v. N. Am. River Runners, Inc., 186 W. Va. 310, 316, 412 S.E.2d 504, 510 (1991). In a number of cases, the Supreme Court of Appeals for West Virginia "has considered exculpatory provisions in such contracts of adhesion that would if applied effectively limit a party's legal exposure, accountability, or liability in a fashion that would otherwise not exist under general law. A review of these cases shows that such exculpatory provisions in contracts of adhesion are given close scrutiny, with respect to both their construction and their potential for unconscionability, particularly where rights, remedies and protections that exist for the public benefit are involved." State ex rel. Dunlap v. Berger, 211 W. Va. 549, 558, 567 S.E.2d 265, 274 (2002). In this instance, the anticipatory release clause was not understood by Evan M. Harris, which is documented by the Defendants in their own records. If Evan understood he had already waived his rights to recover money for any injuries that he may sustain, he would not have been saying that he was intending to sue for them.

    **ii.**    **WAIVER OF CONSTITUTIONAL RIGHTS CLAUSE**: Even though this clause in **Exhibit A** is not implicated by Defendants' Motion to Compel Arbitration, it is a reason for this Court to invalidate all of the provisions contained in it because of its unconscionability. "Courts indulge

---

[5] Clearly, Evan M. Harris did not intend to release the fraudulent and intentional wrongdoing that Plaintiff has plead in the Complaint filed herein.

12

every reasonable presumption against waiver of a fundamental constitutional right and will not presume acquiescence in the loss of such fundamental right." Syllabus Point 2 of State ex rel. May v. Boles, 149 W.Va. 155, 139 S.E.2d 177 (1964); see also Woodruff v. Bd. of Tru. of Cabell Huntington, 173 W.Va. 604, 611, 319 S.E.2d 372, 379 (1984), holding that the West Virginia Constitution, Article III, § 1 is "more stringent in its limitation on waiver [of fundamental constitutional rights] than is the federal constitution." State ex rel. Dunlap v. Berger, 211 W. Va. 549, 561, 567 S.E.2d 265, 277 (2002). The intelligence of a person allegedly consenting to a search is a factor to be considered in determining the voluntariness of a consent search. State v. Williams, 162 W. Va. 309, 316, 249 S.E.2d 758, 763 (1978). This Court should determine that the attempted waiver of Evan M. Harris's constitutional rights is unconscionable and void the entirety of **Exhibit A**.

  **iii.**  **M**ANDATORY **A**RBITRATION **C**LAUSE: The mandatory arbitration clause is also unconscionable for the reasons set forth in this Memorandum of Law. Clearly, Evan M. Harris was not capable of understanding the meaning of the words used in **Exhibit A** and demonstrated his lack of understanding by his own actions, which were documented in the Defendants' records. Clearly, Evan M. Harris did not understand he had waived his right to sue Q & A Associates, Inc. because he threatened to sue the company two times in weeks following his printing his name on **Exhibit A**.

  **F.**  **D**OCTRINE OF **U**NCONSCIONABILITY:

  The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case. Syllabus Pt. 12, Brown supra * 261 (2011), cert. granted, judgment vacated sub nom. Marmet

Health Care Ctr., Inc. v. Brown, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012). Brown v. Genesis Healthcare Corp., 229 W.Va. 382, 729 S.E.2d 217 (2012). "An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract...". Syllabus Point 3, Troy Mining Corp. v. Itmann Coal Co., 176 W.Va. 599, 346 S.E.2d 749 (1986). If a court, as a matter of law, finds a contract or any clause of a contract to be unconscionable, the court may refuse to enforce the contract, enforce the remainder of the contract without the unconscionable clause, or limit the application of any unconscionable clause to avoid any unconscionable result. Brown, supra, *261.

Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. "Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Brown supra, * 261. "The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." Syllabus Point 12, in part, Brown supra *261.

Evan M. Harris did not have the benefit of understanding that he was entering into a contract; what the terms of that contract were; nor did he have the capacity to enter into any such agreement. This Court knows that Evan did not have the benefit of understanding by virtue of the Fenstermacher report and Paul G. Pelts, M.D.'s affidavit, concluding that Evan M. Harris could not have understood what he was signing. Evan Harris actually demonstrated his

14

lack of understanding to the Defendants when he completed the Life Skills Assessment on November 25, 2015. **Exhibit G**. To enforce binding arbitration on him or his parent, Friedrichs Harris, is unconscionable because it would fail to protect Evan Harris when he needed it the most and is direct contravention of the public policy in favor of protecting mentally ill persons. The state has a legitimate interest under its parens patriae powers in providing care to its citizens who are unable because of emotional disorders to care for themselves;…". Addington v. Texas, 441 U.S. 418, 426, 99 S. Ct. 1804, 1809, 60 L. Ed. 2d 323 (1979).

In assessing whether a contract provision is substantively unconscionable, "a court may consider whether the provision lacks mutuality of obligation. If a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable." Syl. Pt. 10, Dan Ryan Builders, Inc. v. Nelson, 230 W.Va. 281, 737 S.E.2d 550 (2012). In this instance, you have businessmen and women in charge of a large corporation on one side of the bargaining fence, and on the other side of the bargaining fence, you have a person who is operating on a borderline level of cognitive functioning who is mentally ill. How grossly disproportionate can the bargaining power be? In this instance, you have Evan M. Harris who did not have a driver's license agreeing to travel to McClean Virginia for purposes of arbitrating any disputes he had with Q & A Associates, Inc. If he did not like what food they were fixing, he would have to drive to McClean Virginia to arbitrate that dispute. If he did not like the color of the paint on the walls of his room, he had to drive to McClean Virginia to arbitrate that dispute. Clearly, the disparity between the parties and the gross inequities of the situation mandate this Court's rejection of the Defendants' motion to compel.

This young man did not know what products are to be used to clean the bathroom. Yet, these Defendants want this Court to bind him to an arbitration clause he was not capable of

15

understanding. Even if this Court would determine that the arbitration clause is a fair one, fairness is not a consideration in determining whether or not he understood it and can be bound to it. Go-Mart, Inc. v. Olson, 198 W. Va. 559, 562, 482 S.E.2d 176, 179 (1996). In Go-Mart, the Supreme Court of Appeals for West Virginia determined despite the fairness of the contract between Go-Mart and the seller, if the seller lacked capacity to enter into the agreement, she could not be bound by it.

      **G.**     **AGREEMENT IS STRICTLY CONSTRUED AGAINST THE DRAFTER**:

In this instance, the drafter of **Exhibit A** did not include a clause that the provisions of it were severable from the others. Thus, this Court should conclude that if any of the clauses in **Exhibit A** are unconscionable, the entirety of the document should be declared unconscionable.  As this Court is aware, there is a long-standing contract principle in West Virginia; the contract is strictly construed against the person who drafted it. "Uncertainties in an intricate and involved contract should be resolved against the party who prepared it." Syllabus Point 1, Charlton v. Chevrolet Motor Co., 115 W.Va. 25, 174 S.E. 570 (1934). See also, Syllabus Pt. 6 Moore v. Johnson Serv. Co., 158 W. Va. 808, 809, 219 S.E.2d 315, 317 (1975), (Ambiguous or doubtful provisions of a lease agreement should be construed most strongly against the party who prepared the instrument.); Syl. pt. 1, West Virginia Ins. Co. v. Lambert, 193 W.Va. 681, 458 S.E.2d 774 (1995), (Where a provision of an insurance policy is ambiguous, it is construed against the drafter, especially when dealing with exceptions and words of limitation.)

This rule is rather important in this instance because the anticipatory release language applies to every one of the Defendants. It says: "I do hereby release Q & A Associates, Inc., its principals, directors, officers, employees, agents and faculty, from any and all liability arising from injury or damages of any kind to my child's property or person arising out of his or her

16

participation in all facets of the Q & A Associates, Inc.". The obvious problem with this language is that the release was intended to be signed by a parent, which clearly it was not. It also shows how sloppily **Exhibit A** was drafted. The last sentence ends where other information should continue. It should read "all facets of the Q & A Associates, Inc.'s programs." Instead, it stops mid-phrase and a period is added.

The second reason why this rule is important is because of the limiting language that is contained in the arbitration clause. In this case, it is rather evident that the language of the release provisions was extremely broad. The language of the arbitration provision is extremely limited in its application. Language that its "principals, directors, officers, employees, agents and faculty" are governed by arbitration is strikingly absent, but clearly Defendant Q & A wanted there to be a distinction.

The arbitration agreement limits arbitration to only those disputes that arise between Q & A Associates, Inc. and the program participant, Evan M. Harris. What the language utilized means is simple, the allegations in the Complaint do not involve Evan M. Harris and Q & A Associates, Inc., they involve the Estate of Evan M. Harris attempting to collect money damages from Q & A, along with its principals and employees, for individual acts of misconduct that are in no way related to his "participation in the program, activity, mentoring or lodging," or from "any other matter arising from me and agreements with Q & A Associates, Inc....". The allegations in the Complaint do not fit within the very narrow limits of this arbitration language. It is clear from **Exhibit A**, the other agreements are consent to participate, consent to exam and treat, search and seizure, unauthorized departures from the program, and payments for high adventure activities that are not included in the program price to be paid each month. As a matter of fact, **Exhibit A**'s title <u>Contract, Medical Authorization, Release and Consent Agreements</u> makes it clear what the "agreements" are.

Some of those agreements apply to some of the Defendants, some of them do not. This Court should strictly construe **Exhibit A** and deny these Defendants the benefit of their poorly drafted document. Defendant Q & A had the right idea, it just went about implementing in the wrong way. Because making a mentally ill, legally incapacitated, and vulnerable young man comply with mandatory arbitration is wrong, this Court should deny these Defendants their requested relief.

## IV.   Conclusion

This Court should loath to find **Exhibit A** enforceable in any way. The pre-injury release is most certainly unconscionable and it should void the entirety of the document. Evan M. Harris did not understand he had waived any rights to recover because he threatened to sue. The waiver of constitutional right to be free from unreasonable search and seizure could not have been knowingly made and should be used by this Court as a reason to find that **Exhibit A** is an unconscionable agreement that was never agreed to by Evan M. Harris, as he clearly indicated by his threats to sue. The binding arbitration clause was likewise not understood by Evan M. Harris, again because he threatened to sue. This extrinsic evidence is admissible because of the standard of review for motions to compel binding arbitration.

If the Court determines that the pre-injury release and the unlawful waiver of constitutional rights clauses do not void the entirety of **Exhibit A**, this Court should refuse to enforce binding arbitration because that clause is unconscionable by itself. It is unconscionable, not because it commits the parties to binding arbitration, but because it was thrust upon an intellectually challenged individual at his most vulnerable state, who has demonstrably shown he did not understand what he had done. These Defendants knew before Evan M. Harris arrived that he was not capable of agreeing to these things, but they let him

18

print his name on the document anyway. Unconscionability doctrine exists to prevent the enforcement of these types of agreements.

Wherefore, Plaintiff prays that this Honorable Court will enter an Order denying the relief requested by Defendants. Clearly the binding arbitration clause is part of an unconscionable agreement that is void of the basic provisions of a legal contract in the State of West Virginia. This Court should not reward the Defendants' efforts to undermine the rights of the mentally ill by requiring these disputes to be submitted to binding arbitration.

                                    Friedrichs Harris, Administrator

                                    By counsel,

_____
David A. Sims (#5196)
LAW OFFICES OF DAVID A. SIMS, PLLC
P.O. Box 5349
Vienna, West Virginia 26105
304-428-5291
304-428-5293 (fax)
david.sims@mywvlawyer.com

<u>CERTIFICATE OF SERVICE</u>

I David A. Sims as counsel for Plaintiff do hereby certify that I served the attached Plaintiff's Memorandum of Law in Support of his Response to Defendants' Motion to Compel Arbitration to its counsel being served through the CM/ECF service:

>Lindsey M. Saad, Esquire
>F<small>LAHERTY</small> S<small>ENSABAUGH</small> B<small>ONASSO</small>, PLLC
>48 Donley Street
>Suite 501
>Morgantown, WV  26501
>lsaad@flahertylegal.com

Dated at Vienna, West Virginia on this 18th day of November 2016.

>Friedrichs Harris, Administrator

>By counsel,

/s/David A. Sims
_____
David A. Sims (W.Va. Bar No. 5196)
LAW OFFICES OF DAVID A. SIMS, PLLC
P. O. Box 5349
Vienna, West Virginia 26105
(304)-428-5291
david.sims@mywvlawyer.com