IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT ELKINS

**FRIEDRICHS HARRIS, ADMINISTRATOR OF
THE ESTATE OF EVAN M. HARRIS,**

      **Plaintiff,**

v.                                              **CIVIL ACTION NO.: 2:16-cv-00046
JUDGE BAILEY**

**Q&A ASSOCIATES, INC.,
ANGELA SHOCKLEY, KEITH BISHOP,
MATTHEW SHOCKLEY, SANDY
SCHMIEDEKNECHT, and TAMMY ROBBINS.**

      **Defendants.**

**REPLY IN SUPPORT OF DEFENDANTS Q&A ASSOCIATES, INC.,
ANGELA SHOCKLEY, KEITH BISHOP, MATTHEW SHOCKLEY, SANDY
SCHMIEDEKNECHT, and TAMMY ROBBINS' MOTION TO COMPEL ARBITRATION
<u>AND STAY PROCEEDINGS</u>**

      COME NOW, Defendants, Q&A Associates, Inc. (hereinafter "Q&A"), Angela Shockley, Keith Bishop, Matthew Shockley, Sandy Schmiedeknecht, and Tammy Robbins (hereinafter "Defendants"), by counsel, Thomas V. Flaherty, Lindsey M. Saad, Christopher M. Jones, and Flaherty Sensabaugh Bonasso, PLLC, and submit this reply in support of their motion, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), for an Order: (1) compelling Plaintiff to arbitrate his claims in this suit; and (2) staying the instant action pending the outcome of the arbitration proceedings.

      Plaintiff's response to Defendants' Motion to Compel Arbitration focuses on two key arguments: 1) the Contract, Medical Authorization, Release, and Consent Agreement (hereinafter "Agreement") signed by Evan Harris as a whole is invalid and 2) even if the contract Agreement is valid, Evan Harris was not a competent party to enter

1

into the contract. As explained more fully below, neither argument of the Plaintiff is supported by the facts of this case or the law governing these issues.

> **I.     At the Time of the Signing of the Agreement, Evan Harris was a Competent Adult and the Arbitration Agreement is Binding as to Him and Any Claims Brought on His Behalf.**

Evan Harris came to reside at Q&A Associates, Inc. on or about November 19, 2015. Q&A is an independent living program for young adults "who have struggled to sustain a productive and positive transition into adulthood." Q&A website. The program teaches life skills and helps young adults enter into the work force in a supportive environment. Although the Plaintiff, Friedrichs Harris, Evan's father now claims that Evan Harris was not competent to enter a contract, the Plaintiff never attempted to declare his son incompetent nor did any medical professional declare his son incompetent at any time prior to his death. Despite the many psychiatric evaluations of Evan Harris, the Plaintiff has not pointed to a single one that declared Evan Harris to be incompetent.

Although the Plaintiff relies heavily on the psychiatric evaluation performed by Kevin M. Fenstermacher, Ph.D. on October 13, 2015. Dr. Fenstermacher did not reach the conclusion that Evan Harris is incompetent or should be in an institutional environment. To the contrary, he noted that enrolling Evan in an independent living facility, such as Q&A, was a good course of action for Evan. See Ex. B  to Plaintiff's Response in Opposition, Fenstermacher Report, p. 21.   Dr. Fenstermacher noted Evan Harris's disorders and cognitive deficits, but also pointed out many ways that Evan Harris could learn and function in society. As noted within Dr. Fenstermacher's report, Evan Harris graduated from high school. *Id.* at 5. From the battery of tests administered

as part of Dr. Fenstermacher's evaluation, Evan Harris was assessed to have a full scale IQ of 75 and cognitive abilities in the low average to borderline range of functioning. *Id.* at 8. It is widely accepted that the average IQ range is 80-120; Evan Harris falls just 5 points below average. It was stated that he is "most likely to learn from hearing concise instructions, being shown how to complete a task, and then supported in his efforts to execute what he has learned. That is, he is a 'Tell Me, Show Me, and Let Me Try' kind of learner." *Id.* at. 19. It goes on to state that "Clearly, Evan has the ability to manage job-related expectations when supported." *Id.* at 20. Further, Evan and his parents are encouraged to contact a vocational expert to help him gain and maintain employment. *Id.* at p. 24. Even despite Dr. Fenstermacher stating in the report that the evaluation could be helpful if Evan's parents want to consider any form of guardianship or conservatorship in the future, Dr. Fenstermacher did not declare him incompetent nor did Evan's parents seek to establish a conservatorship over Evan. Clearly this report reflects the decision of Dr. Fenstermacher and Evan Harris's parents that Evan Harris is competent to make decisions for himself in a supportive environment such as the Q&A program.

The report authored by Dr. Fenstermacher on November 4, 2015, after evaluating Evan Harris on October 13, 2015, at the request of his parents, stands in stark contrast to the affidavit of Paul G. Pelts, M.D. provided by Plaintiff's counsel in this case. Dr. Pelts had not seen Evan Harris since August 18, 2015. While Dr. Fenstermacher's report was prepared prior to Evan Harris's death and the ensuing litigation, Dr. Pelts affidavit was prepared for or by Plaintiff's counsel in this matter to support the pending litigation. It can be assumed that Dr. Pelts is acting as an expert

3

witness for the Plaintiff in this case, and he has a vested interest in the outcome of this motion. Therefore, his opinions must be viewed with that bias in mind. Furthermore, it is remarkable that after 10 years of treatment of Evan Harris, which include 5 years of treatment after Evan turned 18 years old, Dr. Pelts clearly did not declare Evan Harris incompetent.

      The Contract, Medical Authorization, Release, and Consent Agreements, which included the arbitration agreement, was sent to Evan Harris's parents as part of the admission packet prior to Evan Harris's arrival at the Q&A program. His parents were provided the opportunity to review the document. As stated by the Plaintiff in the response brief, Evan Harris's mother is an attorney. The application was returned completed and the Agreement was returned to Q&A with only Evan Harris's name, date of birth, and social security number completed. The signature line for Evan Harris was left blank when the form was returned. It appears that Evan Harris's parents reviewed and completed this form and left the line blank for his signature. There certainly was no indication on the Agreement that Evan Harris should not sign the blank left for his signature. The executed application and Agreement are attached as Exhibit A. When Sandy Schmiedeknecht met with Evan Harris to review the Contract, Medical Authorization, Release, and Consent Agreements, she verbally explained each provision of the one page Agreement to him in simple terms. She provided him an opportunity to ask any questions about the Agreement. Evan Harris indicated that he understood and consented to the terms of the Agreement and signed the Agreement. The aforementioned facts have been attested to by Sandy Schmiedeknecht in the attached affidavit as Exhibit B. Similarly, the Release of Information was provided in the

admission packet and was returned completed with the line for Evan Harris's signature again left blank, which he also signed. Exhibit C. Again, Evan's parents felt that he was the proper and competent party to sign the Release of Information.

In further support of Q&A's ability to adequately explain a contract and Evan Harris's ability to understand a contract, on November 23, 2015, Evan Harris met with Jen Randall and they discussed her role and she decided it was not a good time for him to sign a consent form. The note from that meeting reads as follows: "Evan came in today and had several questions about who I was and my role as a counselor here. He was clearly upset and was not in a space to either go through informed consent or the NATSAP in take paperwork. We therefore spent our time talking about what this place is and is not from my perspective and what we could offer him in terms of getting the independence he says he wants." See Exhibit D. This interaction displays the efforts taken by Q&A to make sure that forms are fully explained and that the client is in the right frame of mind to focus and understand the form.

In a subsequent meeting with Jen Randall on December 7, 2015, Evan asked questions about the consent and whether he could leave the program: "Ev had several questions about my informed consent and wanted to be sure that he could quit if he wanted to in the future." The counselor Jen Randall noted the impression that Evan sometimes overstates his limitations in an attempt to get others do things for him. See Exhibit E. This interaction shows Evan Harris's ability to make his questions known. Further, the fact that he wanted to make sure he could quit reveals that he understands that by signing an agreement, he was bound by a set of rules or agreements. This comprehension of being bound by provisions in an informed consent show that Evan

Harris was capable of comprehending the significance and meaning of the execution of the Agreement signed on November 20, 2015.

The Supreme Court has consistently encouraged a "healthy regard for the federal policy favoring arbitration." *Levin v. Alms and Assocs.*, 634 F.3d 260, 267 (4th Cir. 2011) (internal quotations omitted). "The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Id.* Though the FAA governs whether a dispute is arbitrable, courts must apply state law to decide issues of contract formation. *See Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). "The first contractual criterion that must be satisfied to hold valid the subject Arbitration Agreement is 'competent parties.'" *Syl. pt. 3, in part, Dan Ryan Builders v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012). "To be a competent party, the persons or entities signing the Arbitration Agreement must have had the authority to do so." *State ex rel. AMFM, LLC v. King*, 230 W. Va. 471, 478, 740 S.E.2d 66, 73 (2013). The Fourth Circuit has stated "that a determination of mental capacity is a factual determination." *Shrader v. Heckler*, 754 F.2d 142 (4th Cir. 1985).    In this matter, it is clear that Evan's parents did not possess a conservatorship or other form of guardianship over Evan Harris. Despite having full knowledge of any cognitive or psychological difficulties that Evan possessed, his parents chose not to pursue any actions to deem him incompetent or legally act as his guardian. Dr. Pelts, the psychiatrist that treated Evan Harris for 10 years, never deemed Evan Harris incompetent. In his psychiatric evaluation performed by Dr. Fenstermacher, Dr. Fenstermacher did not declare Evan Harris incompetent but instead stated that he is capable of maintaining a job.  With regard to the arbitration agreement

6

at issue in this case, Evan Harris's parents returned the requisite application and Agreement, which contained the arbitration agreement, and left the signature line blank for Evan Harris to sign. Evan was a competent adult who was capable of asking questions and understood that contracts could have be binding upon him. The facts taken together clearly reveal that Evan Harris was a competent adult who agreed to submit any disputes to binding arbitration.

## II. The Agreement Signed by Evan Harris is a Valid Contract and the Arbitration Agreement is Not Unconscionable.

Plaintiff improperly argues that three provisions of the Contract, Medical Authorization, Release, and Consent Agreements are unconscionable, thus voiding the validity of the entire agreement. Simply put, none of the three provisions cited by Plaintiff are unconscionable; more important, however, even if Plaintiff were correct regarding the anticipatory release clause or the search and seizure clause, the same would not invalidate the arbitration clause, as this court is required by the Federal Arbitration Act ("FAA") to only consider the specific arbitration language at issue.

Briefly, Plaintiff argues that the anticipatory release clause is unconscionable, notwithstanding the fact that case law cited in Plaintiff's own brief makes it clear that such release language is not per se unconscionable. Shockingly, Plaintiff then attempts to invalidate the language in the contract which authorizes staff of Q&A Associates, Inc., a private entity, to conduct searches and seizures or residents' rooms and property. Obviously, Q&A is a private entity. As such, no fundamental constitutional right is implicated and any such argument should be immediately disregarded by the court.

The FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the act." *Moses H. Cone Mem'l Hosp.*

*v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). On a motion to compel under the FAA, a court's inquiry is limited to two issues:

> (1) whether a valid arbitration agreement exists between the parties; and
> (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.

*Syl. Pt. 2, TD Ameritrade*, 225 W. Va. 250, 692 S.E.2d 293; *see also, e.g., Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2858-59 (2010). As prior case law makes clear, federal law dictates that the inquiry into the validity of an agreement to arbitrate must be limited to "the <u>specific</u> 'written provision' . . . that [a] party seeks to enforce," *Rent-A-Center v. Jackson*, because "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." 130 S. Ct. 2772, 2779 (2010) (emphasis added); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

Under the severability doctrine, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 130 S. Ct. at 2778. The court has authority to examine the validity of only the <u>precise</u> arbitration provision that a moving party seeks to enforce. *Id.* at 2778-79. The validity of other contractual provisions, including *other arbitration provisions*, is for the arbitrator to decide:

> Application of the severability rule does not depend on the substance of the remainder of the contract. Section 2 [of the FAA] operates on the specific "written provision" to "settle by arbitration a controversy" that the party seeks to enforce. Accordingly, unless [plaintiffs] challenge[.] the . . . provision [sought to be enforced] specifically, [the court] must treat it as valid under § 2 and must enforce it under §§ 3 and 4, <u>leaving any challenge to the validity of the [a]greement as a whole to the arbitrator</u>.

*Id.* at 2779 (emphasis added). Any "argument . . . that under state law . . . unconscionable clauses" elsewhere in the contract as a whole-or elsewhere in the agreement to arbitrate itself-"c[an] not be severed from the arbitration agreement . . . fails." *Id.* at 2780, n.4.

As clearly set forth above, the Supreme Court has narrowed the scope of a court's authority regarding arbitration agreements. In normal contracts, such as the case at bar, the court can only review the "agreement to arbitrate" which is the arbitration clause, which is, in this case, titled "AGREEMENT TO ARBITRATE ALL DISPUTES." The remainder of the contract, or the "agreement as a whole," must be assessed by the arbitrator. Plaintiff's argument to the contrary is simply inconsistent with federal law.

Similarly, under the FAA, the alleged unconscionability of terms elsewhere in contracts cannot make the parties' agreement to arbitrate substantively unconscionable. The severability doctrine precludes that analysis. For example, consumers in *Wince* recently invited the United States District Court for the Northern District of West Virginia to void an arbitration agreement in their cellular-telephone service agreements on some of the same grounds that Plaintiff has urged here: they argued that various provisions outside the specific agreement to arbitrate (including a disclaimer of certain kinds of liability) rendered the arbitration agreement itself unconscionable. *Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp. 2d 679, 686 (N.D. W. Va. 2010).The district court rejected their argument. *Id.* Because the provisions of the specific arbitration agreement itself were valid, the district court held that "any challenge to these liability-limiting provisions must be raised before an arbitrator." *Id.* (citing, *inter alia, Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302,

9

305 (4th Cir. 2001) ("[W]hen claims allege unconscionability of the contract generally, these issues are determined by an arbitrator because the dispute pertains to the formation of the entire contract, rather than the arbitration agreement.")).

The district court explained:

> This is because it is well established that, "if a party seeks to avoid arbitration and/or a stay of federal court proceedings pending the outcome of arbitration by challenging the validity of enforceability of an arbitration provision on any grounds that 'exist at law or in equity for the revocation of any contract' 9 U.S.C. § 2, the grounds 'must relate specifically to the arbitration clause and not just to the contract as a whole.'" *Snowden v Checkpoint Check Cashing*, 290 F.3d 631, 636 (4th Cir. 2002) (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)). In fact, "when claims allege unconscionability of the contract generally, these issues are determined by an arbitrator because the dispute pertains to the formation of the entire contract, rather than the arbitration agreement." *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001). Accordingly, any challenge to these liability-limiting provisions must be raised before an arbitrator.

*Wince*, 681 F. Supp.2d at 686; *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 448 (2006) ("It is true. . . that the *Prima Paint* rule permits a court to enforce an arbitration agreement in a contract that the arbitrator later finds to be void"). Therefore, this Court needs only to focus on the arbitration agreement found within the Agreement. The arbitration agreement is valid and enforceable against all of the parties in this case.

### III. The Arbitration Agreement Applies Equally to the Non-Signatory Officers and Contractors of Q&A Associates Inc. and to the Estate of Evan Harris

In pursuing this action, Friedrichs Harris acts as the administrator of Evan Harris's estate. The West Virginia Supreme Court has clearly stated that arbitration agreements apply equally to those bringing wrongful death actions on behalf of the signatory to the arbitration agreement. Applying the same reasoning, this Court has

10

previously ruled that "it is clear that the FAA governs whether an arbitration agreement applies to wrongful death claims, even when the claimant is a non-signatory to the agreement. It is also clear that the FAA includes no exception for the arbitrability of wrongful death claims, and 'requires courts to enforce the bargain of the parties to arbitrate.'" *GGNSC Morgantown, LLC v. Phillips*, 2014 U.S. Dist. LEXIS 151910, *18, 2014 WL 5449674 (N.D. W. Va. Oct. 24, 2014) (quoting *Marmet Health Care Ctr., Inc. v. Brown,* 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (2012).Thus, Friedrichs Harris is bound in his capacity as administrator of the Estate of Evan Harris just as Evan Harris would have been bound immediately prior to his death.

Similarly, although the arbitration agreement is between Q&A Associates, Inc. and Evan Harris, the arbitration agreement also applies equally to the agents and employees of Q&A. In *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, the Fourth Circuit cited with approval to a Second Circuit case that enumerated five specific instances where non-signatories could claim the protection of an arbitration agreement. 206 F.3d 411, 417 (4th Cir. S.C. 2000)(citing *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776-79 (2nd Cir. 1995)). The five examples are: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil piercing/alter ego; and (5) estoppel. *Id.* In this case, clearly the five named defendants in this matter, Angela Shockley, Matthew Shockley, Tammy Robbins, Sandy Schmiedeknect, and Keith Bishop were all sued in connection with their roles at Q&A Associates, Inc. All of these named defendants are officers of Q&A Associates, Inc. except for Tammy Robbins, who was a contractor for Q&A Associates, Inc. Clearly, they are all agents for Q&A Associates, Inc. Among the bases for binding non-signatories to arbitration

agreements is the theory of agency law. Under this theory, the agent can assume the protection of the contract with the principal. Courts have applied this principle to allow for non-signatory agents to avail themselves of the protection of their principal's agreement. See *Long v. Silver*, 248 F.3d 309 (4th Cir. 2001)("A non-signatory may invoke an arbitration clause under ordinary state-law principles of agency or contract."); *Roby v. Lloyd's*, 996 F.2d 1353, 1360 (2nd Cir. 1993)("Courts in this and other circuits have consistently held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement."); *Pritzker v. Merrill Lynch*, 7 F.3d 1110, 1121 (3rd Cir. 1993); *Letizia v. Prudential Bache Securities*, 802 F.2d 1185, 1187-88 (9th Cir. 1986). In this case, the arbitration agreement therefore applies to Plaintiff Friedichs Harris in his role of administrator of the estate of Evan Harris and to the named Defendants who are agents of Q&A Associates.

## CONCLUSION

WHEREFORE, Defendants respectfully requests that this Court grant Defendant's Motion to Compel Arbitration and Stay Proceedings pursuant to Rule 26(c) of the *Federal Rules of Civil Procedure* and 9 U.S.C. § 3 and for such other and further relief as this Court deems just and proper.

**Q & A ASSOCIATES, INC.,
ANGELA SHOCKLEY,
KEITH BISHOP,
MATTHEW SHOCKLEY,
SANDY SCHMIEDEKNECHT, and
TAMMY ROBBINS**,

**DEFENDANTS
BY COUNSEL,**

/s/ Lindsey M. Saad
Lindsey M. Saad (WV Bar No. 11155)
Christopher M. Jones (WV Bar No. 11689)
FLAHERTY SENSABAUGH BONASSO PLLC
48 Donley Street, Suite 501
Morgantown, WV 26501
(304) 598-0788
(304) 598-0720 (fax)
lsaad@flahertylegal.com
cjones@flahertylegal.com

and

Thomas V. Flaherty (WV Bar No. 1213)
FLAHERTY SENSABAUGH BONASSO PLLC
200 Capitol Street
P.O. Box 3843
Charleston, WV 25338
(304) 345-0200
(304) 345-0260 (fax)
tflaherty@flahertylegal.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT ELKINS

**FRIEDRICHS HARRIS, ADMINISTRATOR OF
THE ESTATE OF EVAN M. HARRIS,**

    **Plaintiff,**

v.                               **CIVIL ACTION NO.: 2:16-cv-00046
                                      JUDGE BAILEY**

**Q&A ASSOCIATES, INC., A WEST VIRGINIA
CORPORATION, ANGELA SHOCKLEY, KEITH
BISHOP, MATTHEW SHOCKLEY, AND SANDY
SCHMIEDEKNECHT, and TAMMY ROBBINS.**

    **Defendants.**

## CERTIFICATE OF SERVICE

I certify that on this 25th day of November, 2016, I filed electronically via CM/ECF a true copy of **"REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY AND PROCEEDINGS"** with notice of the same being electronically served by the Court, addressed to the following:

        David A. Sims, Esq.
        Law Offices of David A. Sims, PLLC
        P.O. Box 5349
        Vienna, WV 26105

                                    /s/ Lindsey M. Saad
                                    Lindsey M. Saad (WV Bar No. 11155)