## AFFIDAVIT AND CERTIFICATE OF MERIT

### INTRODUCTION:

My name is Chris C. Clatterbuck, Ph.D. After being duly sworn, I do hereby aver as follows: I am over the age of 18 and I am competent to make this affidavit. A copy of my current curriculum vitae evidencing my education, training and experience is attached to this Affidavit as Exhibit A. It correctly outlines my education training and experience.

I provide counseling services on behalf of the Veteran's Health Administration. I began providing those services on behalf of the Veterans Health Administration in 2008. I am a licensed clinical psychologist and I do commit at least eighty five percent (85%) of my time to the active practice of providing counseling services to persons who exhibit some of the same conditions that Evan M. Harris exhibited during his stay at Q & A Associates, Inc. I have a long-standing career of counseling people who have limitations like those documented for Evan M. Harris.

I received my Bachelor of Science Degree from Otterbein College in psychology and my doctorate in Counseling Psychology at Western Michigan University. I am a licensed clinical psychologist by the State of Michigan. I have trained, supervised and worked with licensed professional counselors like Jennifer Randall, LPC. I am familiar with the standard of care applicable to her. Those standards come from the counseling guidelines, my education, training and experience, as well as the ACA Code of Ethics, which West Virginia requires its licensed professional counselors to follow.

I have been compensated for my time associated with reviewing the medical records and making this Affidavit and Certificate of Merit. My compensation is in no way associated with the outcome of this litigation.

1

## RECORDS REVIEWED:

Prior to making this affidavit, I have been provided with copies of and carefully reviewed the following records, Paul Pelts, M.D., Kevin M. Fenstermacher's report, the counseling records from Jennifer Randall, and the records from Q & A Associates, Inc. Dr. Pelts' records provided me with a clinical picture of Evan M. Harris prior to his stay at Q & A Associates, Inc., the Fenstermacher report was a fresh study of Evan M. Harris's educational assessment, his psychological assessment and the continuing needs that Evan M. Harris required during his stay at the Q & A facility. Finally, the Q & A records, as well as Jennifer Randall's records, demonstrated a client who is in crisis that needed a great deal more help than was provided to him by Jennifer Randall.

## CLINICAL HISTORY:

Evan was the older of two children from Kathleen and Rick Harris, who are married. Evan was adopted shortly after his birth by the Harrises. Evan's behavior prior to entering treatment at Waterfall Canyon during February 2015 had strained his relationship with his parents. He was abusing marijuana and alcohol and associating with people who were involved in the drug culture. Despite supports from his parents, Evan was unable to maintain employment or make any meaningful strides toward becoming independent. Although his parents remain connected to and supportive of Evan, his ongoing problems had taken their toll on the family. When Dr. Fenstermacher saw Evan, his parents expressed an unwillingness to have Evan return to living in the family home and believed that he needed continued treatment and related supports to obtain the emotional, social, and independent living skills necessary for his future success.

2

Evan M. Harris was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) as a preschooler, and, as he moved through his later childhood and early adolescence, concerns were raised about a possible bipolar spectrum disorder. According to the Fenstermacher report, Evan M. Harris demonstrated that he could have intense moods and problems with self-regulation. Evan also had a significant issue with keeping pace academically with his peers and he received resource supports and a shadow aide to support his ability to stay on task.

Evan has a long, convoluted history starting in early childhood that involves struggles with bipolar disorder, emotional and behavioral problems, alcohol and marijuana use, and trouble maintaining employment. He also has borderline cognitive functioning and associated learning delays, and his social-emotional development is considered to be markedly immature for his age. Evan was enrolled in treatment at Aspiro after being asked to leave Waterfall Canyon, an independent living program in Ogden, Utah. Evan's functioning in that program was declining and he was asked to leave for violating program rules. Evan had lost his landscaping job, stopped attending job training courses, and was inconsistently taking his medications. Evan's non-compliance with medication is an issue which Jennifer Randall should have recognized may resurface as an issue while at Q & A.

Evan was then enrolled at Aspiro to reengage him in treatment and to stabilize him in an effort to enroll him in another young adult treatment program. While at Aspiro, Evan was cooperative with staff and was participating in his treatment process. The Fenstermacher report was ordered so as to clarify his current mental health functioning, cognitive and academic ability, adaptive functioning, and to inform aftercare planning.

Evan M. Harris underwent a battery of tests prior to his admission to the Q & A program with Kevin Fenstermacher, Ph.D. Dr. Fenstermacher utilized the best testing methods available to him, including:

>  Wechsler Adult Intelligence Scale—Fourth Edition (WAIS-IV)
> Woodcock Johnson Test of Academic Achievement-Fourth Edition, Form A:
> Adaptive Behavior Assessment System — Edition II (ABAS-I1)
> The Rorschach Inkblot Test (Rorschach)
> Minnesota Multiphasic Personality Inventory — Second Edition (MMPI-2)
> Millon Multiaxial Clinical Inventory (MCMI-III)
> Sentence Completion Task
> Substance Abuse Subtle Screening Inventory: Adult Form (SASSI-A3)

In addition to the testing utilized by Dr. Fenstermacher, he also relied upon a clinical interview with Evan. An interview with Mr. and Mrs. Harris. Consultation with Caitlin Galt, LCMHC, Primary Therapist at Aspiro, review of prior psychological/neuropsychological evaluations conducted on: 2-2001, Molly Algermissen, Ph.D. and Matthew Thompson, Psy.D., Children's Hospital, New Orleans, Louisiana, 2-2007, Mark Sigler, Ph.D., NCSP, NCP, Three Springs Outdoor Therapeutic Program: Duck River Campus 9-2009, and, Amy Blackmon, Ph.D., Meridell Achievement Center.

The Fenstermacher report then provides a list of recommendations based upon the testing and evaluations performed. Dr. Fenstermacher agreed that Evan M. Harris needed another program which would continue to provide Evan with the supervision, guidance, therapeutic supports, and guided experiences that he needs to help him as he works toward achieving independent living. Dr. Fenstermacher made it clear that supporting Evan's compliance with the overall rule structure of his subsequent treatment program will be important to his long-term success. However, he also made it clear that compliance with programmatic rules and structure should not come at the expense of developing a

4

connected, firm, and nurturing relationship with Evan. This is especially important to remember as Evan can become quite rigid and "stuck in the mud" when encountering limits or situations that he deems unfair. Dr. Fenstermacher stated in his report that emphasizing concrete skill building and relationally-based supports rather than insight-oriented interventions will likely be most effective for Evan.

Dr. Fenstermacher recommended that Evan continue to participate in individual and group-related interventions; that this type of therapeutic support could provide him with concrete feedback about his emotional coping, interaction style, and relational skills, as well as support his ability to tolerate limits and boundaries placed by others; that it would be important to facilitate Evan's ability to continue to tolerate critical feedback from others without becoming overly defensive or angry. Also, continuing to prompt his self-reflection and as well as reflecting upon the experiences of others should be encouraged to continue to encourage empathy. Dr. Fenstermacher made it clear that Evan was struggling with adoption-related issues, and beginning to explore these issues will likely be important to his overall progress in treatment. It does not appear that Jennifer Randall paid any attention these recommendations. If she did, she did not document the same in her notes.

Dr. Fenstermacher recommended, based upon his clinical judgment, that Evan should participate in a substance abuse prevention curriculum that is integrated into the overall treatment milieu. He documented that Evan would benefit from exploring the underlying emotional, social and relational motivators behind his drug use, which Jennifer Randall did not do.

Dr. Fenstermacher recommended ongoing family contact and therapy would be an important component of Evan's overall treatment process and path toward becoming more independent. Again, Jennifer Randall did not follow the Dr. Fenstermacher's recommendations. Dr. Fenstermacher noted that although reaching an adaptive degree of independence was important for Evan, his level of functioning was much lower than would be expected given his chronological age, and he remained fully engaged in the separation-individuation process of early to mid-adolescence. Based upon his findings, Dr. Fenstermacher recommended that interventions should be targeted at helping Mr. and Mrs. Harris' negotiate Evan's ambivalent push-pull developmental process as he works to gain confidence in his ability to functioning independently while simultaneously managing his fear of separating from his parents (and possibly losing them in the processes), which Jennifer Randall did not do.

Dr. Fenstermacher made it clear that Evan should continue to be followed by a psychiatrist specializing in the treatment of young adults as medication management will likely play an ongoing role in his treatment plan. There is no mention of any communications between Dr. Pelts and Jennifer Randall of any kind. As the primary therapist, it was Jennifer Randall's responsibility to collaborate with Dr. Pelts in an effort to meet the recommendations offered by Dr. Fenstermacher and to develop new strategies if they were required.

Dr. Fenstermacher recommended that Jennifer Randall or any other counselor to help identify ways Evan could broaden independent decision making and problem solving and to teach him to learn more from his own decision making and teach him to self-advocate, which Jennifer Randall did not do.

6

The Fenstermacher report is a well-written by a highly qualified clinician and provided Jennifer Randall with the knowledge and insight she needed to provide care for this young man. Test results and Dr. Fenstermacher's evaluation of these results were clear and well-developed. It provided recommendations for care of a young man with a complex and complicated mental health history. Sadly, it would appear that Evan's condition and needs were beyond Jennifer Randall's ability to provide.

## BREACHES OF THE STANDARD OF CARE:

Based upon my education, training and experience, I am familiar with the standard of care in providing care and treatment to clients like Evan M. Harris. It is my opinion that Jennifer Randall breached the standard of care in the following ways:

1. Jennifer Randall had a duty to perform an intake and to perform an initial assessment of Evan M. Harris. There are no documents in her records documenting that these things were done, which is well-below the standard of care.

2. Jennifer Randall failed to review available records of past care by other professionals. When counselors learn that their clients are in a professional relationship with other mental health professionals, they request a release from the client to inform the other professionals and strive to establish positive and collaborative professional relationships. Jennifer Randall did not do that. She did not do anything to foster the continued relationship with Paul Pelts, M.D., the physician who had been treating Evan since he was about 15 years of age. Her failure to contact Dr. Pelts was reckless misconduct on her part.

3. Jennifer Randall did not make regular assessments of Evan's risk of self-harm or harm to others. She had a duty to assess Evan's mental status: mood, orientation, affect, thought content, thought processes, presence of psychosis, and suicidal or homicidal ideations. Her SOAP notes are poor and do not follow subjective, objective, assessment and plan requirements.

4. Jennifer Randall did not properly document her client's condition and the changes in his condition, despite obvious evidence from the Case Notes that Evan's condition was changing for the worse. Counselors are required to include sufficient and timely documentation to facilitate the delivery and continuity of services. Counselors take reasonable steps to ensure that documentation accurately reflects client progress and services provided.

5. When the first death occurred, there was no discussion by Jennifer Randall in her documentation that she provided Evan any support. Cluster suicides are a well-documented phenomenon, which Jennifer Randall knew or should have known, and she should have taken steps to prevent. When Evan mentioned suicide to her, Jennifer Randall's reaction was "I told him he would not be here o see what other reaction would be." This statement demonstrates a lack of empathy, lacks confrontation, and it demonstrates Jennifer Randall's lack of awareness of the seriousness of Evan's condition.

6. Jennifer Randall did not review or make use of the well-developed recommendations from Dr. Fenstermacher to provide proper care and services for Evan M. Harris. Based upon the Fenstermacher report, Evan M. Harris needed a great deal more from his counselor which Jennifer Randall did not provide.

8

7. Jennifer Randall failed to provide any written treatment plan for Evan M. Harris. Counselors and their clients work jointly in devising counseling plans that offer reasonable promise of success and are consistent with the abilities, temperament, developmental level, and circumstances of clients. Counselors and clients regularly review and revise counseling plans to assess their continued viability and effectiveness, respecting clients' freedom of choice. Jennifer Randall did not devise an effective counseling plan to deal with her client's changing mental and emotional condition. She was required to adjust or re-evaluate the plan as Evan's condition changed, which she did not do. There were no treatment goals identified or documented for her patient.

8. Jennifer Randall did little if anything to promote the well-being of Evan M. Harris. He needed care and services that she was not capable of providing, but she did not inform anyone of those facts, nor did she enlist the help of other clinicians in providing services that Evan needed.

9. The ACA Code of Ethics provides that counselors must recognize that support networks hold various meanings in the lives of clients and consider enlisting the support, understanding, and involvement of others as positive resources, when appropriate, with client consent. It appears from the records that I reviewed that Jennifer Randall made minimal effort to convince her client that she should be able to communicate with his parents about his condition and changes in his condition. The records or the absence of the same demonstrate that Jennifer Randall did not prioritize Evan's need for family support, despite the recommendations from Dr. Fenstermacher.

9

10. The ACA Code of Ethics requires counselors to protect the confidential information of prospective and current clients. Counselors can disclose information only with appropriate consent or with sound legal or ethical justification. Jennifer Randall had sufficient legal and ethical justification to report her client's changing condition to his parents and certainly to Paul Pelts, M.D., which she did not do.

11. The ACA Code of Ethics provides that counselors must, at initiation and throughout the counseling process, inform clients of the limitations of confidentiality and seek to identify situations in which confidentiality must be breached. Jennifer Randall does not document any such communications anywhere in her records. Jennifer Randall had a duty breach confidentiality to protect her client's life. In the alternative, it may be that Jennifer Randall failed to recognize Evan's decline and impending crisis, which would also be a breach of the standard of care.

12. The ACA Code of Ethics requires counselors to keep information confidential, but that requirement does not apply when disclosure is made to protect the client or identified others from serious and foreseeable harm or when legal requirements demand that confidential information must be revealed. Counselors are to consult with other professionals, like Paul Pelts, M.D. when in doubt as to the validity of an exception. Jennifer Randall did not do that.

13. The ACA Code of Ethics requires that counselors inform parents and legal guardians about the role of counselors and the confidential nature of the counseling relationship, consistent with current legal and custodial

10

arrangements. Counselors are sensitive to and must respect the inherent rights and responsibilities of parents/guardians regarding the welfare of their children according to law. Counselors work to establish, as appropriate, collaborative relationships with parents/guardians to best serve clients. Jennifer Randall did not do any of those things in her care and treatment of Evan M. Harris.

14. The ACA Code of Ethics requires that counselors who are providing care to adult clients who lack the capacity to give voluntary consent to release confidential information, to seek permission from an appropriate third party to disclose information. It is clear that Evan did not have capacity and thus Jennifer Randall had a duty to do more to inform Evan's parents about his condition and changes in that condition. In this instance, Jennifer Randall did not document any such efforts, despite the evidence in the Fenstermacher report that Evan M. Harris lacked capacity to make decisions on his own.

15. The ACA Code of Ethics requires counselors to read, understand, and follow the ACA Code of Ethics and adhere to applicable laws and regulations. It appears that Jennifer Randall did not consider her obligations under the ACA in dealing with Evan M. Harris.

16. The ACA Code of Ethics requires that counselors practice only within the boundaries of their competence, based on their education, training, supervised experience, state and national professional credentials, and appropriate professional experience. It was critical that Jennifer Randall failed to recognize Evan's cognitive issues and failed to recognize the complexity of his care needs. She did not seek supervision or make a case consultation with other

11

professionals, which she was required to do. Jennifer Randall demonstrated a lack of understanding of Evan M. Harris' condition and was thus practicing in an area that her education and training were lacking. She should have sought the assistance of Paul Pelts, M.D. and other providers in meeting the needs of her client Evan M. Harris and to make certain her efforts were sufficient to meet the care needs of her client.

17. Jennifer Randall failed to recognize that her client was deteriorating to a point that she was no longer in a position to provide the services that he needed in order to keep him alive. Her SI assessments were poorly documented and there was no routine assessment of his mood/affect, his thought processes or content. These would have provided her with evidence of the risk that Evan posed to himself.

18. Jennifer Randall failed to recognize that the efforts of the Q & A staff to limit his contact with Evan's parents was detrimental to his well-being.

19. Jennifer Randall failed to document that she was even aware of what services, if any, Q & A Associates were providing, which she should have done.

20. Jennifer Randall failed to recognize that the counseling she was offering Evan was not what Dr. Fenstermacher had recommended. It appears that Jennifer Randall paid very little or no attention to Dr. Fenstermacher's recommendations.

## PROXIMATE CAUSE:

The breaches of the standard of care that I have outlined above are all a proximate cause of the death of Evan M. Harris. Suicides can and are prevented every day, but it requires a skilled clinician who is committed to recognizing the changes in the mental and

12

emotional state of his or her client and making certain the client's needs are being met. It is clear that Jennifer Randall failed to do that and a result, Evan M. Harris is deceased. His death was foreseeable and preventable.

**OTHER OPINIONS:**

This Affidavit and Certificate of Merit contains my current opinions about the care provided by Jennifer Randall to Evan Harris to a reasonable degree of psychological and counseling probability. My opinions may be updated with additional information or may be changed based upon additional information. As there has not been any depositions taken or any other discovery completed, I reserve the right to change these opinions or supplement them as the need may arise.

Further the affiant sayeth naught.

_____
Chris C. Clatterbuck, Ph.D.

**VERIFICATION**

STATE OF WEST VIRGINIA;

COUNTY OF WOOD, TO WIT:

Before me, the undersigned authority, personally appears Chris C. Clatterbuck, Ph.D. who being first duly sworn according to law, deposes and says that the averments contained the foregoing Affidavit and Certificate of Merit are true and correct to the best of his information, knowledge, and belief.

Sworn to and subscribed before me, this 6th day of March 2018.

_____
NOTARY PUBLIC

My Commission Expires: September 23, 2020.



13