**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF WEST VIRGINIA**

Friedrichs Harris, Administrator of the
Estate of Evan M. Harris, deceased,

     Plaintiff,

v.                                       Civil Action No. 2:16-cv-46
                                          Judge Bailey

Q & A Associates, Inc.
Angela Shockley, Individually,
Keith Bishop, Individually,
Matthew Shockley, Individually,
Sandy Schmiedeknecht, Individually, and,
Tammy Robbins, Individually,

     Defendants.

---

## PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE

NOW COME Plaintiff, by and through his attorney, David A. Sims, and hereby submits *Plaintiff's Omnibus Motions in Limine*.  In support of the same, Plaintiff offers the following:

This case is an action to recover for the wrongful death of the decedent Evan M. Harris who died on January 24, 2016 while in a program offered by the Defendant Q & A Associates, Inc. in Davis, West Virginia. Evan M. Harris died on that day because these Defendants did not follow the very specific treatment recommendations provided by Kevin Fenstermacher, Ph.D. in his 24-page report that was provided to these Defendants prior to his admission into the program. These Defendants knew what type of care and treatment that Plaintiff's son needed before his arrival; they knew that they did not have the

personnel or the resources to provide the services that Evan Harris needed, yet they accepted him anyway because of the money his parents were going to be paying for his participation in the program.

Plaintiffs brought this action against these Defendants for Evan's wrongful death and for the injuries and damages the beneficiaries of the Estate sustained as a result of that death. The only issues that should be presented to the jury and to this Court are negligence, intentional infliction of emotional distress, causation and damages, including punitive damages. Pursuant to Rule 402, "[i]rrelevant evidence is not admissible." Fed R. Evid. 402. As such, only evidence relevant to the issues of negligence, intentional infliction of emotional distress, causation, and damages should be admitted by this Court at a trial of this action.

The Federal Rules of Evidence define relevant evidence as evidence that "(a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed R. Evid. 401. As such, any evidence that either party seeks to introduce at trial that is irrelevant to the issues of negligence, causation, and damages is inadmissible and should be excluded at trial. Even assuming any of the issues which are subject to Plaintiffs' Omnibus Motions in Limine are arguably relevant, which is not the case, the relevancy of such evidence would be outweighed by the extremely prejudicial impact it would have on the issues in the case. Therefore, this Court should exclude it pursuant to Rule 403, which states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403.

2

I.     MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR ARGUMENT REGARDING ANY ALLEGED CRIMINAL ACTIVITY OR ENCOUNTERS WITH LAW ENFORCEMENT BY EVAN M. HARRIS OR EVAN'S BIOLOGICAL PARENTS.

Alleged criminal activity or background information of Evan M. Harris has no relevance whatsoever to the issues of negligence, intentional infliction of emotional distress, causation or damages. The only reason for introducing such evidence would be to prejudice the jury Evan Harris and his family members. Any such inference, innuendo, or reference to Evan's previous encounters with law enforcement officers is severely more prejudicial than probative and could only seek to improperly influence the jurors sitting to try the issues in this case.

Rick Harris admitted through discovery and at the hearing in this matter that his son had been involved in previous incidents involving law enforcement. However, Evan's involvement with law enforcement personnel has no bearing on his credibility as he was never convicted of any of these crimes and they are not crimes of false swearing. As such, under the Federal Rules of Evidence, any evidence regarding Evan M. Harris's prior criminal arrests are not admissible as they are irrelevant and are highly prejudicial. Most of all, the Defendants' attempts to introduce such evidence would only be to negatively influence the jury with information that has no bearing on any of the legal or factual issues of the case.

Rick Harris admitted through discovery and at the hearing in this matter that his son's biological mother and father had been involved in previous incidents involving law enforcement. However, their involvements with law enforcement personnel has no bearing on any of the issues in this case as there was never any real evidence of any convictions of Evan's biological parents of any of crimes and they were not crimes of false swearing. As

3

such, under the Federal Rules of Evidence, any evidence regarding Evan M. Harris's

biological parents' prior criminal arrests are not admissible as they are irrelevant and are

highly prejudicial. Most of all, the Defendants' attempts to introduce such evidence would

only be to negatively influence the jury with information that has no bearing on any of the

legal or factual issues of the case.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting

any evidence, questioning, arguments, inferences, suggestions, or the like regarding the

criminal history of Evan M. Harris or his previous encounters with law enforcement

officers along with those of his biological parents.

II.    MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR
       ARGUMENT REGARDING ANY MEDICAL HISTORY OF EVAN M. HARRIS'S BIOLOGICAL MOTHER.

There has been no evidenced elicited in this case that any family history or

congenital/genetic issue was the cause of Evan M. Harris's death. In Dawson v. United

States, 11 F. Supp. 3d 647, 657 (N.D.W. Va. 2014), Judge Keely made it clear that proximate

cause is still required. The West Virginia Supreme Court of Appeals has interpreted

"proximate cause" as "'that cause which in actual sequence, unbroken by any independent

cause, produced the wrong complained of, without which the wrong would not have

occurred.'" Mays v. Chang, 213 W.Va. 220, 579 S.E.2d 561, 565 (2003) (quoting Syl. Pt. 3,

Webb v. Sessler, 135 W.Va. 341, 63 S.E.2d 65 (1950)). No expert witness for the defense has

been offered to testify that Evan M. Harris's death was caused by a genetic, congenital, or

family medical problem or contained in any medical history of Evan M. Harris's biological

mother. Therefore, any past history or alleged genetic issue cannot be established by expert

testimony and should be excluded by this Court. Moreover, without establishing a causal

link between some prior family medical problem or history and Evan M. Harris's death,

which does not exist, is wholly irrelevant to the facts of this case and this Court should exercise its authority to exclude the same. In addition, under Rule 403, any such inference, innuendo, or reference to Evan's biological mother's past medical history, if any, is more prejudicial than probative and seeks to inflame the passions of jurors; and is not linked to the relevant issues in this case. Thus, any mention, inference, or argument pertaining to Marvelle's family's medical history should be precluded.

WHEREFORE, Rick Harris prays that this Honorable Court enter an order prohibiting any evidence, questioning, arguments, inferences, suggestions, or the like regarding the past medical history of any of Evan M. Harris's biological family members.

## III.    MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR ARGUMENT REGARDING COLLATERAL SOURCE BENEFITS.

The collateral source rule applies to prevent compensation or indemnity received by an injured party from a collateral source, wholly independent from the wrongdoer from diminishing the damages otherwise recoverable from the wrongdoer. <u>Berg v. United States</u>, 806 F.2d 978, 984 (10th Cir.1986). In federal court, the state interpretation of the collateral source rule is controlling. <u>See</u> <u>Pipkins v. TA Operating Corp.</u>, 466 F. Supp. 2d 1255, 1258 (D.N.M. 2006) (applying New Mexico application of the collateral source rule in the Federal case).

The collateral source rule is widely recognized in West Virginia as being not only a rule of evidence that "precludes a defendant in a personal injury or wrongful death case from introducing evidence that some of the plaintiff's damages have been paid by a collateral source," but also a rule of damages that "precludes the defendant from offsetting the judgment against any receipt of collateral sources by the plaintiff." <u>Kenney v. Liston</u>, 233 W. Va. 620, 626-627 (W. Va. 2014).  Clearly then, all collateral sources, including

payments made on behalf of any insurance company for the costs of Evan M. Harris's participation in the program offered by the Defendants, if any, should be excluded. There is evidence that the Harris's sought to be reimbursed by their medical insurer for the costs of Evan's participation in the Defendants' program, but there has not been any evidence that payments were ever made to reimburse them for the costs of such treatment.

Even if such evidence were relevant, and the Collateral Source Rule did not bar such evidence, its admission would unfairly prejudice the jury as its probative value is substantially outweighed by the danger for unfair prejudice, confusion of the issues, and misleading the jury. <u>Fed R. Evid.</u> 403. As such, all references, testimony, exhibits, evidence, and/or arguments regarding any collateral source benefits received by Rick Harris is improper, contrary to the Collateral Source Rule, extremely prejudicial, and should thereby be excluded from trial proceedings.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any evidence, questioning, arguments, inferences, suggestions, or the like regarding any payments made by a collateral source.

### IV. MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR ARGUMENT REGARDING DEFENDANTS' TO PAY ANY JUDGMENT.

The financial circumstances of the parties are not matters for the jury to consider in determining the outcome of a case.  As stated by the Supreme Court of the United States, "[c]ompensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct."  <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 416 (U.S. 2003), <u>citing</u> Restatement (Second) of Torts § 903, pp. 453-454 (1979); <u>Cooper Indus. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 424, 432 (U.S. 2001). As such, the Court has made clear that compensatory damages serve the purpose of

making the plaintiff whole after suffering such a "concrete loss."  Cases are to be tried on

their merits and without reference to irrelevant evidence that would be prejudicial to

either party.  As such, Defendants' wealth or lack thereof is completely irrelevant to this

goal of compensatory damages. As Defendants do not want Plaintiff Rick Harris to mention

that they have millions of dollars of insurance coverage to pay for their wrongs, the same

should be true for them. Therefore, all references, testimony, exhibits, evidence, and/or

arguments concerning the Defendants' ability or inability to pay a damage award are

irrelevant and should be excluded from trial proceedings.

WHEREFORE, Rick Harris requests that this Honorable Court enter an order

prohibiting any evidence, questioning, arguments, inferences, suggestions, or the like

regarding the Defendants ability to pay a judgment against each of them.

## V.    MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR ARGUMENT THAT A LARGE JURY VERDICT WOULD CAUSE DEFENDANT Q & A ASSOCIATES, INC. TO "SHUT DOWN" OR CAUSE IT OTHER FINANCIAL DIFFICULTIES.

Evidence, argument or innuendo about the financial impact that a jury verdict may

have on either party is not only irrelevant, but also extremely improper and prejudicial. A

verdict in an action for damages stemming from medical malpractice is meant to

compensate the injured victim for the injuries sustained, irrespective of the financial

impact it may or may not have on a particular defendant. State Farm Mut. Auto. Ins. Co. v.

Campbell, 538 U.S. 408, 416 (U.S. 2003), citing Restatement (Second) of Torts § 903, pp.

453-454 (1979); Cooper Indus. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432 (U.S.

2001). Any evidence regarding the financial impact of an unfavorable verdict against the

Defendants is presented not to establish relevant evidence, but to implant bias and/or

sympathy in the minds of jurors.

WHEREFORE, Rick Harris requests that this Honorable Court enter an order prohibiting any references, testimony, exhibits, evidence, and/or arguments regarding any potential impact of a large jury verdict on either party are irrelevant and should be excluded from trial proceedings.

## VI. MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR ARGUMENT RELATING TO CONDUCT OF ANY INDIVIDUALS OR ENTITIES NOT PARTIES TO THIS ACTION AS BEING RESPONSIBLE FOR OR CONTRIBUTING TO THE INJURIES AND DAMAGES OF WHICH PLAINTIFF COMPLAINS.

Most defendants in an action like this one are generally looking for someone else to blame for their missteps in providing appropriate supervision of the decedent Evan M. Harris and proper adherence to the recommendations from Kevin Fenstermacher, Ph.D. regarding Evan's treatment needs. The only allegations of negligence, causation and damages are against these Defendants. At this point, this Court should only permit evidence that relates to the actions of these Defendants and no one else. If these Defendants believed that someone else or some other entity was responsible for Evan's death, they should have filed a third-party complaint against them, which did not occur. Because that did not happen, this Court should not permit the Defendants to attempt to blame non-parties for Evan Harris's death.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any evidence, questioning, arguments, inferences, suggestions, or the like tending to indicate that Evan Harris's death was caused by someone else.

8

VII.    **Motion in Limine Barring all References, Testimony, Exhibits, Evidence, and/or Argument Regarding the Manner, Time, or Circumstances Under which the Plaintiff Employed an Attorney or the Nature of the Attorney's Fee Arrangements.**

The nature and circumstances upon which Evan Harris's family contacted and retained counsel cannot assist in proving any issue in controversy in the present case. Furthermore, the fee structure of Plaintiff's counsel with his client is totally irrelevant to the issues in this case. The only reason for making reference to the circumstances upon which the client contacted an attorney or what the attorney's fee structure is would be to prejudice the jury by informing them that an award to Rick Harris would be a financial gain to his attorneys. This argument is prejudicial and highly improper. These Defendants do not want their fee arrangements with their counsel exposed or that some insurance company in another state is paying their fees and expenses, the same should be true for Plaintiff Rick Harris.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any evidence references, testimony, exhibits, evidence, and/or argument regarding how Evan Harris's family contacted counsel or counsel's fee structure must be prohibited.

VIII.    **Motion In Limine Barring all References, Testimony, Exhibits, Evidence, and/or Argument Concerning Settlement Discussions.**

Even though there has not been any discussions about settling this case, Rule 408 of the <u>FRE</u> provides that evidence of either party "furnishing, promising, or offering—or accepting, promising, to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and conduct or a statement made during compromise negotiations about the claim…" is not admissible.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any evidence references, testimony, exhibits, evidence, and/or argument concerning settlement discussions.

## IX.    MOTION IN LIMINE TO SEQUESTER ALL TRIAL WITNESSES DURING TRIAL, WITH THE EXCEPTION OF THE NAMED PARTIES.

"The judge's power to control the progress and, within the limits of the adversary system, the shape of the trial includes broad power to sequester witnesses before, during, and after their testimony." Geders v. United States, 425 U.S. 80, 87 (1976).  "It exercises a restraint on witnesses "tailoring" their testimony to that of earlier witnesses; and it aids in detecting testimony that is less than candid." Id. In this case, with the obvious exception of the parties, Plaintiff Rick Harris requests that all witnesses be sequestered from the Courtroom during trial until the particular witnesses' testimony has concluded. A material issue in this case are conversations that took place between the Harrises and the Defendant's employees. These discussions are most important to this case. Should the employees be able to hear the testimony of other employees, the witnesses may alter or tailor evidence to be consistent with what is heard. Sequestering all trial witnesses will prevent the witnesses from seeing and hearing other witness testimony or arguments of the attorneys and altering their testimony to adjust to what is heard. No party will be prejudiced by imposing this request to sequester the witnesses.

WHEREFORE, Rick Harris requests this Honorable Court to enter an Order sequestering all trial witnesses until after the witness testified.

**X.    MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR ARGUMENT THAT AN AWARD WOULD RESULT IN UNJUST ENRICHMENT OR PLAINTIFF "WINNING THE LOTTERY"**

A verdict in an action for damages stemming from a wrongful death case is meant to compensate the beneficiaries of the Estate for the injuries and damages that they have sustained, irrespective of the financial impact it may or may not have on a Defendant. State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416 (U.S. 2003), citing Restatement (Second) of Torts § 903, pp. 453-454 (1979); Cooper Indus. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432 (U.S. 2001). Clearly, there is a large amount of money at stake. However, any reference to a substantial verdict resulting in the Harrises "winning the lottery" or "hitting the jackpot" or the like would be highly improper, misleading, and would be intended only to bias and prejudice the jury against this family and those arguments must be excluded.

There is not any amount of money that will ever compensate the Harrises for the loss of their son. The pain and suffering that they feel each day will affect them the rest of their lives. Because those facts are true, these Defendants should not be permitted to claim that this family has somehow won the lottery because their son died to their reckless and negligent acts. This family deserves better treatment by this Court than Evan Harris received in the hands of these Defendants, which requires that such arguments be excluded.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any references, testimony, exhibits, evidence, and/or arguments regarding any potential jury verdict as hitting the lottery, hitting a jackpot, or being any kind of financial windfall for the wrongful death of their son.

11

## XI. MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR ARGUMENT THAT THE MOTIVE OR PURPOSE OF THE LAWSUIT IS OR WILL BE TO COMPENSATE PLAINTIFF'S COUNSEL.

The purpose of this lawsuit is to compensate the Harris family for the loss of their son, which they contend was caused by Defendants' reckless and negligent conduct. As this Court is acutely aware, these cases are difficult to litigate and consume the resources not of the clients, but of the lawyers. Reference to counsel's fee arrangement cannot prove any issue in controversy in this case and, as such, is highly improper. Not only is it irrelevant, but evidence of the fee arrangement of with his counsel would be highly prejudicial to the Harrises because such evidence would be offered with no purpose other than to bias the jurors by informing them that a large jury verdict would be a financial gain to his attorneys. This argument is improper, irrelevant, highly prejudicial, and therefore should be excluded by this Court. Rick Harris and the Harris family are entitled to their day in court and that his case be heard free of bias and prejudice and permit this Court and jury decide his fate, without irrelevant and highly prejudicial innuendo like this have any role in its outcome.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any references, testimony, exhibits, evidence, and/or argument insinuating that the purpose of this lawsuit is to compensate Plaintiff's counsel.

## XII. Motion in Limine barring all references, testimony, exhibits, evidence, and/or argument to expert witness opinions beyond those stated in the Defendants' disclosures of their testifying experts.

Defendants provided a disclosure about their experts witness they may call to testify at trial, as well as the subject matter, substance, facts, and opinions on which that expert plans to testify. Plaintiff has relied upon the information contained in that disclosure to prosecute his case.

WHEREFORE, the Rick Harris requests this Honorable Court enter an order prohibiting any references, testimony, exhibits, evidence, and/or argument referring to expert witness opinions beyond those stated in the Defendants' expert witness disclosure.

**XIII.** **MOTION IN LIMINE BARRING ALL REFERENCES, TESTIMONY, EXHIBITS, EVIDENCE, AND/OR ARGUMENT SUGGESTING THAT DEFENDANTS CANNOT GET A FAIR TRIAL BECAUSE THEY ARE NOT BEING JUDGED BY A JURY OF THEIR PEERS.**

These Defendants should be prohibited from suggesting that they are unable to get a fair trial and/or should be judged by their peers. Such references are completely irrelevant to the issues in this case of negligence, causation, and damages.  Any such argument is improper.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any references, testimony, exhibits, evidence, and/or argument suggesting Defendants cannot get a fair trial because they are not being judged by a jury of their peers.

**XIV.** **MOTION IN LIMINE BARRING *AD HOMINEM* ATTACKS ON PLAINTIFF'S COUNSEL.**

The personal and professional conduct of each party's attorneys is wholly irrelevant to the issues of liability, causation, damages. Furthermore, personal *Ad Hominem* attacks on trial counsel, no matter what the personal attack may be, would be prejudicial to Plaintiff Rick Harris and would be transparent attempts to bias the jury against him. The issues to be resolved are about the facts of this case and not about the attorneys who are litigating it.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting all personal *Ad Hominem* statements, inferences, suggestions, arguments or the like that attack the attorneys in this case.

**XV.**    **Motion in Limine barring all references, testimony, exhibits, evidence, and/or argument that the Plaintiff must establish causation with certainty and/or that the Plaintiff must eliminate any other possibilities.**

In West Virginia, the law is clear that "the plaintiff must not only prove negligence but must also show that such negligence was the proximate cause of the injury." Sexton v. Grieco, 216 W. Va. 714, 716 (2005). In addition, "[t]he burden is on the plaintiff to prove by **a preponderance of the evidence** that the defendant was negligent and that such negligence was the proximate cause of the injury." Id (emphasis added). Therefore, any reference, testimony, exhibits, evidence, and/or argument that the Plaintiff must prove that Evan's death were certainly caused by the Defendants' wrongful conduct is a misstatement of the law meant only to confuse the juror's regarding Plaintiff's burden of proof. Plaintiff need only prove that, more likely than not, it was the Defendants' wrongful conduct was a proximate cause in the death of Evan Harris.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any references, testimony, exhibits, evidence, and/or argument that the Plaintiff must establish causation with certainty and/or that the Plaintiff must eliminate any and all other possibilities.

**XVI.**    **Motion in Limine barring all references, testimony, exhibits, evidence, and/or argument regarding the reputation or skill of counsel.**

References, testimony, exhibits, evidence, and/ or argument regarding the reputation or skill of the attorneys is wholly irrelevant to the issues in the present action and could be inserted only to confuse or bias the jury against a party. The attorneys are not witnesses in the case and thus, their reputation or skill is completely irrelevant. Evidence or argument of the same would only serve to attempt to prejudice the jury against Rick Harris and his family.

WHEREFORE, Rick Harris requests this Honorable Court enter an order prohibiting any and all references, testimony, exhibits, evidence, and/or arguments regarding the reputation or skill of counsel.

## XVII.  Motion in Limine to Exclude Testimony of Daniel Bruce Thistlethwaite, M.D.

Defendants have identified Daniel Bruce Thistlethwaite, M.D. as an expert witness in this case. Defendants' expert has absolutely no experience of any kind in evaluating programs like the one offered at The Journey WV. In his written statement, he discusses that he has reviewed the records from the case and the Complaint. In the index of documents that the Defendants' expert relied upon, there is no mention whatsoever of any program description; the assessments provided by Q & A Associates, Inc.; the peer review of any program offered; nor is there any evidence of what the program The Journey WV entails. Yet, Dr. Thistlethwaite concludes that the program was sufficient to meet the needs of Evan Harris. The problem with that conclusion is it must be based upon facts and his qualifications. There is no mention of any kind in his CV that he has any education, training or experience in evaluating programs like the one at issue in this case.

Federal Rule of Evidence 702 governs the admission of expert testimony and provides as follows: A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. The Supreme Court of the United States announced five factors to consider in conducting a

15

Rule 702 analysis in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 593-94 (1993). To assess the relevancy and reliability of expert testimony under Rule 702, a court may consider (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community. <u>United States v. Crisp</u>, 324 F.3d 261, 266 (4th Cir. 2003) (citing <u>Daubert</u>, 509 U.S. at 593-94). A court's analysis using these five factors "must be 'a flexible one'" because, "[r]ather than providing a definitive or exhaustive list, <u>Daubert</u> merely illustrates the types of factors that will 'bear on the inquiry.'" <u>Id</u>. (citing <u>Daubert</u>, 509 U.S. at 593-94). Ultimately, "it is the trial court's duty to play a gatekeeping function in deciding whether to admit expert testimony: '[T]he trial judge must ensure that any and all scientific evidence admitted is not only relevant, but reliable.'" <u>Id</u>. at 265 (quoting <u>Daubert</u>, 509 U.S. at 589). Further, "Rule 702 excludes expert testimony on matters within the common knowledge of jurors." <u>Persinger v. Norfolk & W. Ry. Co.</u>, 920 F.2d 1185, 1188 (4th Cir. 1990). Lastly, even admissible expert testimony may be excluded under Federal Rule of Evidence 403. <u>See</u> <u>Westberry v. Gislaved Gummi AB</u>, 178 F.3d 257, 261 (4th Cir. 1999) ("[G]iven the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded."). This testimony is the type that the courts were speaking of when they utilize this form of analysis.

Dr. Thistlethwaite's report does not meet the requisites for expert testimony under Rule 702. He does not have any scientific, technical, or other specialized knowledge that

will help the trier of fact to understand the evidence or to determine a fact in issue in this case. He has no experience, whatsoever in evaluating programs like The Journey WV. He has not identified any experience in even treating people like Evan Harris in his clinical practice. There is no way that he has the requisite knowledge and skill to testify as an expert witness in this field. If he had such experience, it is not revealed in the expert witness disclosure or on his CV, a copy of which is attached hereto as Exhibit A.

Since Dr. Thistlethwaite does not possess the skills of expert witness in this type of programs, his opinions about the adequacy of the program are not admissible because of the lack of such experience. Secondly, his opinions are not admissible because his opinions are not based upon sufficient facts or data of any kind. He has not taken the time to evaluate the outcomes of other participants in the program, nor has he been asked to review such data. He has no knowledge of the Durkin suicide, which the Defendants lied about to the Plaintiff and his wife, so there is no way that the Court should conclude that he has sufficient information to reach the opinions he wants to offer. Thirdly, the testimony must be the product of reliable principles and methods. Dr. Thistlethwaite has not identified one reliable principle or method that is verifiable in any form, because he lacks any education, training or experience in how to evaluate programs like The Journey WV. Finally, Dr. Thistlethwaite cannot have reliably applied the principles and methods to the facts of the case because he knows nothing about the facts of the case or the way these programs operate. Thus, his testimony should be excluded pursuant to Fed. R. Evid. 702.

In support of this motion in limine to exclude, Plaintiff points out the following information from Dr. Thistlethwaite's CV:

PUBLICATIONS

17

Poster Presentation — Two Cases of QTc Prolongation with Ziprasidone in the Elderly APA —53rd Institute On Psychiatric Services, 10/12/01

Factitious Disorder, Case Study and Literature Review. Presented at Charleston Area Medical Center Research Day, 04/24/91. Awarded 2nd prize for outstanding paper

The problem with these two publications is that they have nothing to do with the facts of

this case. In addition, they are not peer-reviewed articles that identify this physician's

experience with the topics at hand.

The Presentations that Dr. Thistlethwaite has made are equally unimpressive:

"VNS —A New Treatment Strategy for Major Depressive Disorder": Snowshoe Mountain Resort -09/10/06

"Expert Testimony and Medical Ethics": Workers' Compensation and Employment Law Conference; Tamarack, Beckley, WV — 05/06/05

"Using Psychiatric and Psychological Experts in Litigation: Psychological and Psychiatric Evaluations III Used During the Trial Process in West Virginia": Charleston — 10/15/04 and 10/14/05

"Mental Health Issues in the Aging Patient": NASWV Conference — 03/29/04

Guest Lecturer WVU School of Law — Medicine and the Law — Varied topics

"Fine Tuning the Treatment of Depression: Augmentation Strategies and Managing Complex Patients": Montreal, Canada: Continuing Medical Education, Inc. — 08/04/00

"Successful Management of Depression: A Physiological Approach": Seattle, WA; Continuing Medical Education, Inc. — 06/08/00

"Successful Management of Depression: A Physiological Approach": Costa Mesa, CA; Continuing Medical Education, Inc. — 06/07/00

"Depression and PMDD: Successful Outcomes for the Millennium": Cincinnati, OH — 06/04/00

"Clinical Solutions to Managing Complicated Depression": San Diego, CA — 03/22/00

Speakers Bureau/Lecturer for: Forest, Takeda

18

As the Court can see, this physician has never spoken about this topic before in his lifetime, yet the Defendants are attempting to qualify him to testify what they did to Evan Harris was just fine. Such opinion testimony has to be properly supported or it should be excluded.

There is no way in the world that Dr. Thistlethwaite's testimony would withstand a Daubert analysis. As this Court is aware, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171 (1987). As the Committee Notes on Rules 2000 Amendments, Daubert set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the Daubert Court are (1) whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The Court in Kumho held that these factors might also be applicable in assessing the reliability of nonscientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S.Ct. at 1175. This case is one of those cases that Kumho was alluding too. This physician has no idea what he is talking about and this Court should

exercise its gatekeeping function and exclude the testimony as unsupported and thus
unreliable.

Despite any proof or documentation of any kind, Dr. Thistlethwaite concludes that
programming was designed to assist Mr. Harris in his transition as young adult into being
more independent. There is no description of the programming that Dr. Thistlethwaite is
relying upon, nor has any such documentation of the programming been provided in
responses to any discovery requests, because there is no programming. He does not even
mention that Evan Harris was not able to comprehend the life skills book, which Sandy
Schmiedeknecht testified at the January 4, 2017 hearing. If he was not capable of
understanding the life skills book, one cannot reasonably conclude that the programming
was sufficient to meet his needs. Yet, there is no mention of this information anywhere in
this expert's report, nor any mention that he reviewed this testimony.

Dr. Thistlethwaite concludes that Evan Harris was not "showing signs or symptoms
of becoming a significant suicide risk." What that statement should alert the Court is that
even this expert recognized that Evan Harris was a suicide risk. What Dr. Thistlethwaite
does not say is what programming was being provided to treat Evan Harris for suicide risk.
The reason is that there was no such programming of any kind, which Dr. Thistlethwaite
fails to point out in his opinions. On a separate occasion, Dr. Thistlethwaite states that there
is nothing in the records to suggest that Evan Harris was a significant suicide risk. The
obvious problem with Dr. Thistlethwaite's conclusion is there is no scientific method of
identifying one that is a "significant suicide risk", which again demonstrates his lack of
knowledge in this area. If one is a suicide risk, it is significant. There is no other conclusion
a rational person could make.

20

Dr. Thistlethwaite concludes, later in his report, that "I believe the risk assessments provided by Q & A were appropriate and met the standard of care that would be expected in monitoring an individual with the types of problems that Mr. Harris displayed throughout his life." Again, there has not been a single assessment provided to counsel for Plaintiff in response to the discovery requests, nor are they identified on the materials that this expert claims he relied upon. Such expert testimony is just not reliable because it is not based upon anything scientific at all. This man was paid a great deal of money, $600.00 per hour, to look at documents and develop opinions from nothing more than utter speculation as the assessments he speaks of do not exist. This Court should exercise its gatekeeping function and exclude this testimony.

Wherefore, Rick Harris prays that this Honorable Court will deny the testimony of Defendant's expert witness on the basis that it is unreliable; not based upon any scientific principles, and devoid of any suggestion that his method of evaluating the facts of this case are at all accepted in the field. The reason is that they are not accepted in the field. This Court should conduct a <u>Daubert</u> hearing and exclude this man's opinions as being completely unreliable.

Friedrichs Harris, Administrator

s/David A. Sims

By:    _____
David A. Sims (#5196)
LAW OFFICES OF DAVID A. SIMS, PLLC
P.O. Box 5349
Vienna, West Virginia 26105
304-428-5291
304-428-5293 (fax)
david.sims@mywvlawyer.com

**<u>CERTIFICATE OF SERVICE</u>**

      I David A. Sims as counsel for Plaintiff do hereby certify that I served PLAINTIFF'S OMNIBUS MOTIONS IN LIMINE by CM\ECF counsel for Defendants:

Lindsey M. Saad, Esquire
FLAHERTY SENSABAUGH BONASSO, PLLC
48 Donley Street
Suite 501
Morgantown, WV  26501
lsaad@flahertylegal.com

      Dated at Vienna, West Virginia on this 7th day of May 2018.

Friedrichs Harris, Administrator
By counsel,

/s/David A. Sims

_____
David A. Sims (W.Va. Bar No. 5196)

LAW OFFICES OF DAVID A. SIMS, PLLC
P. O. Box 5349
Vienna, West Virginia 26105
(304)-428-5291
david.sims@mywvlawyer.com