IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT ELKINS

FRIEDRICHS HARRIS, ADMINISTRATOR OF
THE ESTATE OF EVAN M. HARRIS,

        Plaintiff,

v.                         CIVIL ACTION NO.: 2:16-cv-00046
                                 JUDGE BAILEY

Q&A ASSOCIATES, INC.,
ANGELA SHOCKLEY, KEITH BISHOP,
 MATTHEW SHOCKLEY, SANDY
SCHMIEDEKNECHT, and TAMMY ROBBINS.

        Defendants.

## JOINT PRETRIAL ORDER

Pursuant to Fed. R. Civ. P. 16 and L. R. Civ. P. 16.7, the parties, by counsel, and by direction of the Court, hereby certify that the matters and statements hereinafter set out, except as amended by the Court, or by the parties, shall determine the issues of law and the course of the trial of the above-styled case:

**I.**

### *Plaintiff's Rule 26(a)(3) Disclosures*

(A)    Witnesses Plaintiff intends to present at trial:

      a.    Angela Shockley
            Q & A Associates, Inc.
            P.O. Box 657
            Davis, West Virginia 26260

      b.    Keith Bishop
            8203 Flag Run
            Davis, WV 26260

      c.    Matthew Scott Shockley
            Q & A Associates, Inc.

1

    P.O. Box 657
    Davis, West Virginia 26260

d.    Sandy Schmiedeknecht, MA, CLC, CPC, CAC
      Q & A Associates, Inc.
      P.O. Box 657
      Davis, West Virginia 26260

e.    Tammy Robbins-Ellis, Parent Strategist
      Q & A Associates, Inc.
      P.O. Box 657
      Davis, West Virginia 26260

f.    Friedrichs Harris
      3720 Edenborn Avenue
      Metairie, LA 7002

g.    Kathy Harris
      3720 Edenborn Avenue
      Metairie, LA 7002

h.    Daniel Keith Sullivan, Mentor Supervisor
      98 Black Diamond Drive
      Redcreek, WV 26289

i.    Deputy E. C. Surguy
      Tucker County Sheriff's Department
      341 2nd St.
      Parsons, WV 26287

j.    Irene Crowl, Mentor
      Q & A Associates, Inc.
      P.O. Box 657
      Davis, West Virginia 26260

k.    Christie Woodfin, C.E.P.
      Woodfin & Associates LLC
      1708 Peachtree St. NW, #310
      Atlanta, GA 30309

l.    Paul Pelts, M.D. Psychiatrist
      Pelts, Kirkhart, & Associates, LLC,
      1539 Jackson Ave., #300
      New Orleans, LA 70130

m.    Michael Vanness Anderson, Mentor

2

355 Buckhorn Ridge
Davis, WV 26260

n.    Deputy C. R. Donelson
Tucker County Sheriff's Department
341 2nd St.
Parsons, WV 26287

o.    Deputy Brian T. Zirk
Tucker County Sheriff's Department
341 2nd St.
Parsons, WV 26287

p.    Lisa Corley, Medical Examiner
Route 2 Box 285
Elkins, WV 26241

q.    TFC Justin J. Schmidle
W.V. State Police
P.O. Box 113
Parsons, West Virginia 26287-0113

r.    Janette Bennett Basile, Paramedic
6545 Appalachian Highway
Davis, WV 26260

s.    Joe Strait, EMT
6545 Appalachian Highway
Davis, WV 26260

t.    Angela Marsh, EMT
6545 Appalachian Highway
Davis, WV 26260

u.    Steven Mitchell, EMT
6545 Appalachian Highway
Davis, WV 26260

v.    Marielena Sophia Plat
317 Cortland Road
Davis, WV 26260

w.    Eric Henry Allman
317 Cortland Road
Davis, WV 26260

x.      Dahlia Froeger
        P.O. Box 657
        Davis, WV 26260

y.      Jennifer Randall Reyes, LPC
        Big Top Counseling and Consulting, LLC
        57 Saint Francis Way
        Bridgeport, West Virginia 26330

z.      L. Jay Mitchell, Founder
        Greenbrier Academy for Girls
        P.O. Box 798
        Alderson, WV 24910

aa.     Mark Shockley, MSW
        Q & A Associates, Inc.
        P.O. Box 657
        Davis, West Virginia 26260

bb.     Paul Lewis
        Current Address Unknown
        Massachusetts

cc.     Diane Lewis
        Current Address Unknown
        Massachusetts

dd.     Joan Huffman, Mentor
        Q & A Associates, Inc.
        P.O. Box 657
        Davis, West Virginia 26260

ee.     Audrey Peavey, Admissions Director
        Q & A Associates, Inc.
        P.O. Box 657
        Davis, West Virginia 26260

ff.     Scott Huffman, Administrative Assistant
        Q & A Associates, Inc.
        P.O. Box 657
        Davis, West Virginia 26260

gg.     Merissa Berry, Mentor
        Q & A Associates, Inc.
        P.O. Box 657

4

Davis, West Virginia 26260

hh.    Gerald Johnson, Mentor
       Q & A Associates, Inc.
       P.O. Box 657
       Davis, West Virginia 26260

ii.    Selena Wiley Gill, Mentor
       Q & A Associates, Inc.
       P.O. Box 657
       Davis, West Virginia 26260

jj.    Erica Peavey, Mentor
       Q & A Associates, Inc.
       P.O. Box 657
       Davis, West Virginia 26260

kk.    Marcie Jones, Mentor Life Coach
       Q & A Associates, Inc.
       P.O. Box 657
       Davis, West Virginia 26260

ll.    Joseph Giannone, Sr.
       c/o I. Micael Luber, P.C.
       1420 Walnut Street
       Suite 300
       Philadelphia, PA 19102

mm.    Caitlyn Gault, Therapist
       Aspiro Group
       63 East 11400 South #186
       Sandy, UT 54070

nn.    Kevin M. Fenstermacher, Ph.D.
       Psychological Solutions
       4505 Wasatch Blvd, Suite 380B
       Salt Lake City, UT 84124

oo.    Other staff members of Q&A Associates, Inc.

pp.    Any records custodians or other witnesses needed to authenticate any
       document introduced at trial;

qq.    Plaintiff reserves the right to call any witness for the purpose of
       impeachment or rebuttal;

5

rr. Plaintiff reserves the right to call any witness designated by any other party.

ss. Plaintiff reserves the right to elicit testimony from any expert witnesses or fact witnesses disclosed by Defendants;

tt. Plaintiff reserves the right to call any additional witnesses whose identity may be disclosed between the date of this disclosure and the time of trial;

uu. Plaintiff reserves the right to supplement this witness disclosure;

vv. Plaintiff reserves the right to withdraw one or more of the above-named witnesses or identify additional witnesses pending completion of further discovery;

ww. Plaintiff reserves the right to call any rebuttal witnesses as necessary and as the trial of this matter proceeds.

(B) <u>Documents or Other Exhibits Plaintiff Expects to Present at Trial</u>:

a. St. George Episcopal School 1998-1999 Kindergarten

b. Children's Hospital Evaluation 1996

c. Lynn Parker, Ph.D. Pre-School Evaluation 2-10-1996

d. Mercy Family Center Classroom Observation and Teacher Interview 3-7-1997

e. Mercy Family Center Psycho-educational Evaluation 11-11-1997

f. Children's Hospital Evaluation 2001

g. St. George Episcopal School 2000-2001

h. Behavior Journal by Rick Harris

i. San Marcos Treatment Center Neuropsychological Evaluation 6-6-2005

j. Mercy Family Center Evaluation Age 13 6-13-2005

k. Speech Memory Therapy 3-20-2006

l. San Marcos Treatment Center Neuropsychological Evaluation 7-15-2006

m. Report of Achievement Testing by Michael C. Norman 6-4-2007

n.      Three Spring Outdoor Therapeutic Program Psychological Evaluations 8th grade 2-7-2007; 2-14-2007; 2-21-2007

o.      Bachman Academy Progress Report 9-17-2008

p.      Medical Records of Paul Pelts, M.D.

q.      Bachman Academy Diploma 5-14-2011

r.      Evan Harris – Graduation Speech Video

s.      Graduation Pictures from Bachman Academy

t.      Oak Grove School / Waterfall Academy Application for enrollment date 02-09-2015

u.      Impact letter to Evan From Mom 8-29-2015

v.      Letters from Evan to Mom & Dad dated 8-25-2015; 9-3-2015; 9-10-2015; 9-17-2015; 9-24-2015; 10-1-2015; 10-8-2015; 10-8-2015 (2); 10-8-2015 (Gratitude Letter); 10-15-2015; 10-22-2015; 10-29-2015; 11-5-2015; 11-12-2015; Christmas List 11-12-2015.

w.      Kevin Fenstermacher Ph.D. Psychological Evaluation 10-13-2015

x.      Q & A Admission Packet 9-14-2015

y.      File from Tucker County Sherriff's Department for Investigation of Evan Harris's Death

z.      File from Tucker County Sherriff's Department for the Investigation of the John Doe #1, M.K. Durkin Death

aa.     Q & A File re: Evan Harris

bb.     Waterfall Canyon Academy Records

cc.     Majoria Drug Records (9/13/17)

dd.     Q & A emails, parent handbook, bills

ee.     Q & A admission packet (blank)

ff.     Evan Harris's Q&A admission packet (completed)

gg.     Text messages from Kathy Harris

hh.     Text messages from Q & A Associates to Kathy Harris

ii.     Q & A BestNotes on Evan Harris

jj.     Notes and bills from Counseling Sessions with Jen Randall

kk.     Photos of Evan Harris's death scene

ll.     Aspiro Documents

mm.     Woodfin & Associates (Independent Educational Consultants) file on Evan Harris

nn.     Social Security Docs: Louisiana Department of Health and Hospitals file on Evan Harris

oo.     Handwritten notes on Evan Harris September 2015 (Caitlyn Galt)

pp.     Death Certificate of John Doe #1 M. K. Durkin

qq.     Affidavit of Chris Clatterbuck, Ph.D.

rr.     Affidavit of Paul Pelts, M. D.

ss.     Affidavit of Friedrichs Harris, M.D.

tt.     Banking Signature Card for Evan Harris and Sandy Schmiedeknecht

uu.     Transcript of Hearing on Defendants' Motion to Compel Binding Arbitration

vv.     References on Autism and Related Disorders, Underlying Risk Factors and Treatment

ww.     Aspiro Wilderness Program Physical and Labs

xx.     Social Security Adult Disability 2011

yy.     Social Security Adult Disability 2012

zz.     Social Security Adult Disability 2013

aaa.    Social Security Adult Disability 2014

bbb.    Social Security Adult Disability 2015

ccc.    Social Security Adult Disability 2016

ddd.    Waterfall Canyon – Telephone Conversation Notes

eee.    Woodfin & Associates, Christie Woodfin M. Ed, LPC. C.E.P.  Education Planner

fff.    Parent Survey for Woodfin 6-5-2014

ggg.    Evan's Treatment & Therapeutic Team

hhh.    Letters from Q & A Resident Elias Doundoulakis 10-18-2016; 11-12-2016

iii.    Medical Records for Big Top Counseling

jjj.    Big Top Counseling Website Documents

kkk.    Medical Records for Paul Pelts, M.D.

lll.    Letters of Administration

mmm. 2009 Tax Return for Evan Harris

nnn.    2012 Tax Return for Evan Harris

ooo.    Awards for Evan Harris

ppp.    Supported Employment Community Based Assessment Narrative Report by Jeffrey Schiro, B.S. dated 5-3-2011

qqq.    List of manifestations 6-29-2005

rrr.    Mercy Family Center 10-17-2004

sss.    Meridell Achievement Center Neuropsychological Evaluation 06-26-2009

ttt.    Affidavit of Sandy Schmiedeknecht

uuu.    Eckerd Academy –Blue Ridge regarding Keith Bishop

vvv.    Eckerd Academy of the Blue Ridge Blog

www.    McMahon "Named New Director WV Journey– Newspaper Article in Charleston Gazette

xxx.    Defendants Rule 26 Expert Disclosures

yyy.    Defendants Rule 26 (a)(1) Disclosures

zzz.     Defendants Answers to the Complaint

aaaa.    Defendants Answers to Plaintiff's Request for Production of Documents to Sandy Schmiedeknecht

bbbb.    Defendants Answers to Plaintiff's Request for Production of Documents to Tammy Robbins

cccc.    Defendants Answers to Plaintiff's Request for Production of Documents to Keith Bishop

dddd.    Funeral Program for Evan M. Harris

eeee.    Go Fund Me Page for Double S. Stables Barn

ffff.    Independent contractor agreement for Sandy Schmiedeknecht

gggg.    The Journey Program "Last Stop Shot" Training Program

hhhh.    Life Skills Assessment by Sandy Schmiedeknecht

iiii.    Life Skills Curriculum for The Journey WV

jjjj.    McMahon Camp Death Report

kkkk.    Notes from Meeting to Discuss Evan's Death

llll.    Staff List for Eckerd Youth Alternatives Program

mmmm.        Daily Reporter Article on Wrongful Death Case

nnnn.        Q & A Parent Handbook

oooo.    Program Staff Information for Q & A

pppp.    Testimony of Paul Lewis father of Ryan Lewis before Congress

qqqq.    W.Va. Secretary of State Online Data Services Information for Defendants' Business Ventures.

rrrr.    Plaintiff reserves the right to offer any exhibit identified by Defendants.

ssss.    Plaintiff reserves the right to use any exhibit listed as exhibits by Defendants.

tttt.   Plaintiff reserves the right to use any additional exhibits produced between the date of this disclosure and the time of trial, if admissible.

uuuu.  Plaintiff reserves the right to supplement this exhibit list.

### ***Defendant's Rule 26(a)(3) Disclosures***

(A)   <u>Witnesses Defendant intends to present at trial:</u>

1.   Friedrichs Harris – Mr. Harris is the Plaintiff in this case and the father of the decedent Evan M. Harris.

2.   Kathy Harris – Mother of Evan Harris.

3.   E. Harris. – Sister of Evan Harris.

4.   Deputy B.T. Zirk
     215 First Street
     Parsons, WV 26287
     304-478-2321

5.   Deputy C.R. Donelson
     215 First Street
     Parsons, WV 26287
     304-478-2321

6.   Trooper J.J. Schmidle
     9105 Seneca Trail
     Hambleton, WV 26269
     304-478-3101

7.   Medical Examiner Lesa Corley
     Route 2 Box 285
     Elkins, WV 26241
     304-642-4515

8.   Emergency Medical Technician Joe Strait
     6545 Appalachian Highway
     Davis, WV 26260
     304-866-7450

9.   Paramedic Jannette Basile
     6545 Appalachian Highway
     Davis, WV 26260
     304-866-7450

11

10.    Angela Shockley - Defendant

11.    Keith Bishop –  Defendant

12.    Matthew Shockley – Defendant

13.    Sandy Schmiedeknecht – Defendant

14.    Tammy Robbins – Defendant

15.    Mark Shockley

16.    Michael Anderson

17.    Daniel Sullivan

18.    Sophia Plat

19.    Eric Allman

20.    Dahlia Froeger

21.    Jenn Randall

22.    Daniel Thistlethwaite, M.D. – Defendants' expert witness

(B)    <u>Witnesses the Defendant may present at trial</u>:


1.    Other staff members of Q&A Associates, Inc.

2.    Any records custodians or other witnesses needed to authenticate any document introduced at trial;

3.    Defendants reserve the right to call any witness for the purpose of impeachment or rebuttal;

4.    Defendants reserve the right to call any witness designated by any other party.

5.    Defendants reserve the right to elicit testimony from any expert witnesses or fact witnesses disclosed by Plaintiff;

6.    Defendants reserve the right to call any additional witnesses whose identity may be disclosed between the date of this disclosure and the time of trial;

7.    Defendants reserve the right to supplement this witness disclosure;

8.    Defendants reserve the right to withdraw one or more of the above named witnesses or identify additional witnesses pending completion of further discovery; and

9.    Defendants reserve the right to call any rebuttal witnesses as necessary and as the trial of this matter proceeds.

(C)    <u>Documents or Other Exhibits Defendant Expects to Present at Trial:</u>

1.    File from Tucker County Sherriff's Department

2.    Q&A File re: Evan Harris

3.    Waterfall Canyon Academy Records

4.    Majoria Drug Records

5.    Q&A emails, parent handbook, bills

6.    Q&A admission packet (blank)

7.    Evan Harris's Q&A admission packet (completed)

8.    Text messages from Kathy Harris

9.    Q&A notes on Evan Harris

10.   Notes and bills from Counseling Sessions with Jen Randall

11.   Photos produced by Plaintiff

12.   Aspiro Documents

13.   Woodfin & Associates (Independent Educational Consultants) file on Evan Harris

14.   Excerpts from plaintiff's diary

15.   Dr. Pelts's file on Evan Harris

16.   Psychological evaluation of Evan Harris by Kevin Fenstermacher, Ph.D.

17.   NONLA medical records for Evan Harris

18.   Social Security 2011 Adult Disability Report

19.    Social Security Docs: Louisiana Department of Health and Hospitals file on Evan Harris

20.    Handwritten notes on Evan Harris September 2015 (Caitlyn Galt)

21.    Speech and Language Report by Children's Hospital

22.    Psych Evaluation by Three Springs Outdoor Therapeutic Program

23.    Neuropsychological Evaluation at Children's hospital

24.    Psychological Evaluation by Lynn Parker, Ph.D.

25.    Marcy Family Center's Classroom Evaluation Overview

26.    Neuropsychological Evaluation at San Marcos

27.    Discharge Summary from San Marcos

28.    Death Certificate of Evan Harris

29.    File Materials of Dr. Thistlethwaite

30.    Walgreen's Pharmacy records

31.    CVS Pharmacy Records

32.    NATSAP Assessments

33.    Independent Contractor Agreement of Sandy Schmedieknecht

34.    Evan Harris Graduation Speech

35.    Transcript from Evidentiary Hearing on January 4, 2017

36.    Plaintiff's responses to Defendants' written discovery directed to Plaintiff.

37.    Any and all documents produced in response to discovery requests made by the parties in this matter.

38.    Any and all documents produced by either party in this matter.

39.    All documents identified and/or produced in Plaintiff's answers to Defendants' interrogatories and requests for production;

14

40.     All documents identified and/or produced in Defendants' answers to Plaintiff's interrogatories and requests for production;

41.     Demonstrative Exhibits;

42.     Defendants reserve the right to offer any exhibit identified by Plaintiff, if admissible.

43.     Defendants reserve the right to use any exhibit listed as potential exhibits by Plaintiff, if admissible.

44.     Defendants reserve the right to use any additional exhibits produced between the date of this disclosure and the time of trial, if admissible.

45.     Defendants reserve the right to supplement this exhibit list.

46.     Defendants reserve the right to withdraw one or more of the above exhibits or identify additional exhibits pending completion of further discovery.

47.     Defendants reserve the right to offer any rebuttal exhibits as necessary and as the trial of this matter proceeds.

## *II.*

### *Contested Issues of Law Requiring Ruling Before Trial*

**Plaintiff:**

**Defendants:**

1.   Whether the WV Consumer Protection Act applies to claims of personal injury or death and whether the Plaintiff complied with the statutory requirements to assert such a claim. These Defendants will brief this matter prior to the pre-trial conference.

2.   Whether the prior death at Q&A Associates, Inc. should be excluded from the trial of this matter. These Defendants will submit supplemental briefing on this matter prior to the pre-trial conference.

*III.*
***Plaintiff's Essential Elements That Must Be Proved To Establish a Claim and Damages***

***Sought***

**Questions of Law**:

   a.  Plaintiff alleges that Defendants intentionally inflicted emotional distress upon
       Plaintiff by their reckless and wrongful conduct caused the beneficiaries to suffer
       extreme emotional distress, all of which was foreseeable to them. To succeed on
       such a claim, Plaintiff must show: (1) that the defendant's conduct was atrocious,
       intolerable, and so extreme and outrageous as to exceed the bounds of decency;
       (2) that the defendant acted with the intent to inflict emotional distress, or acted
       recklessly when it was certain or substantially certain emotional distress would
       result from his conduct; (3) that the actions of the defendant caused the plaintiff to
       suffer emotional distress; and, (4) that the emotional distress suffered by the
       plaintiff was so severe that no reasonable person could be expected to endure it.
       *Travis v. Alcon Laboratories, Inc*., 202 W.Va. 369, 374, 504 S.E.2d 419, 424
       (1998).

   b.  Plaintiff alleges that Defendants negligently performed assessments on Evan
       Harris to determine if he was even a proper candidate for the program and to
       determine if the program was in any way beneficial to him once he arrived.
       Plaintiff contends that Kevin Fenstermacher, Ph.D. made recommendations to the
       Defendants to follow, which would have assisted them in providing proper
       assessments to Evan Harris, but that the Defendants did not follow them.

   c.  Plaintiff alleges the Defendants negligently failed to supervise Evan Harris while
       he was a participant in the program, which provided the means and opportunity
       for him to commit suicide. Plaintiff contends that Defendants knew that program
       participants were in danger based upon an earlier suicide that occurred a little
       more than a month before and that another suicide was likely to occur.

   d.  Plaintiff alleges the Defendants failed to exercise reasonable care in hiring people
       to provide for care and treatment of program participants and that they lacked
       proper credentials to provide the care and treatment that Evan Harris needed in
       this case. The relevant inquiry in a negligent hiring or retention case is, when the
       employee was hired or retained, did the employer conduct a reasonable
       investigation into the employee's background vis a vis the job for which the
       employee was hired and the possible risk of harm or injury to co-workers or third
       parties that could result from the conduct of an unfit employee? Should the
       employer have reasonably foreseen the risk caused by hiring or retaining an unfit
       person? *McCormick v. West Virginia Dept. of Public Safety*, 202 W.Va.
       189,193,503 S.E.2d 502, 506 (1998} (quoting *State ex rel. West Virginia State
       Police v. Taylor*, 201 W.Va. 554, 560 n. 7, 499 S.E.2d 283, 289 n. 7 (1997)). "[A]
       primary question in determining whether an employer may be held liable, based

on a theory of negligent hiring or retention, is the nature of the employee's job assignment, duties and responsibilities-with the employer's duty with respect to hiring or retaining an employee increasing, as the risks to third persons associated with a particular job increase." *Id*. at 194, 503 S.E.2d at 507 (citing *Ponticas v. K.M.S. Investments*, 331 N.W.2d 907, 913 (Minn. 1983)).

e.  Plaintiff alleges the Defendants did not properly train their staff members in order to provide proper care, treatment and supervision of the program participants, which was negligent and a proximate cause of Evan Harris's death.

f.  Plaintiff alleges the Defendants did not properly staff their programs so as to provide sufficient people to properly provide services for, care and supervise the participants.

g.  Plaintiff alleges the Defendants create their programs to provide proper services to participants like Evan M. Harris.

h.  Plaintiff alleges the Defendants negligent in performing assessments of Evan Harris once he was in the program. Defendants represented to people like Plaintiff that their programs were successful, but Defendants failed to point out that they were not performing any assessments to determine the effectiveness of the programs.

i.  Plaintiff alleges the Defendants misrepresented the effectiveness of their programs. Plaintiff had a psychological evaluation performed for his son prior to his program participation, but Defendants did not ever follow the recommendations of the evaluator. Plaintiff contends that Defendants were either negligent in their actions in reporting what was happening to their son. Under West Virginia law, a claim for negligent misrepresentation of fact exists where a person "under a duty to give information to another ... makes an erroneous statement when he has no knowledge on the subject, and thereby misleads another to his injury." *Folio v. Clarksburg*, 221 W.Va. 397,405, 655 S.E.2d 143, 151 {2007} {quoting Syl. Pt. 1, *James v. Piggott*, 70 W.Va. 435, 64 S.E. 667 (1910)).

j.  Plaintiff alleges Defendants lied about his son's condition and that they had lied about the death of the other program participant. A successful fraud claim requires a showing:(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it. Syl. Pt. 2, J*ennings v. Farmers Mut. Ins. Co*., 224 W.Va. 636,687 S.E.2d 574 (2009).

k.  Defendants engaged in violations of the West Virginia Consumer Credit Act by misrepresenting the services that they were going to provide to Plaintiff's son while he was a program participant in exchange for the money that he was spending on his care and treatment.

*IV.*

## *Defendant's Essential Elements That Must Be Proved To Establish Defenses*

To impose liability for suicide, the defendants must have 1) a duty to prevent the suicide from occurring and 2) where the defendant committed a tortuous act that caused a mental condition in the decedent that proximately resulted in an uncontrollable impulse to commit suicide, or prevented the decedent from realizing the nature of his act.

The second exception is very narrow, allowing recovery in tort only where the defendant has caused a severe physical injury to the victim which leads to extraordinary mental incapacity resulting in suicide; or where the defendant intentionally and maliciously has tormented the victim into a suicidal state. *McLaughlin*, 461 A.2d at 339.  Essential and central to such cases is either the ***actual infliction of severe bodily injury by the defendant***, or the ***willful infliction of extreme emotional distress***.[1]  *McLaughlin*, 461 A.2d at 339. However, Plaintiff has not alleged, nor are there any facts to support an allegation that the Defendants inflicted a severe physical injury upon Evan Harris.  Simply put, the Defendants did not physically assault Evan Harris. Likewise, there are no allegations or facts supporting an allegation that the Defendants willfully and intentionally inflicted extreme emotional distress upon Evan Harris.  Therefore, the second exception does not apply.

Under the first exception, in order to impose liability for suicide the Defendants must have:

       ***a.***  Custodial care of Evan Harris;

       ***b.***  Knowledge that Evan Harris was suicidal;

       ***c.***  And must have failed to take the appropriate measures to prevent the suicide

---

[1] *McLaughlin v. Sullivan*, 461 A.2d 123 (N.H. 1983), involved allegations of negligent performance of the practice of law.

from occurring.

*Moats v. Preston County Com'n*, 206 W. Va. 8, 521 S.E.2d 180 (1999). The evidence will prove that the first exception of the "duty to prevent" does not apply as well.

Regarding Plaintiff's claim of violation of the West Virginia Consumer Credit and Protective Act under §46A-6-106(a), "any person who purchases or leases goods or services and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article may bring an action in the circuit court of the county in which the seller or lessor resides or has his or her principal place of business or is doing business[.]"§46A-6-106(b) "Unfair methods of competition and unfair or deceptive acts or practices" are defined under §46A-6-102 (18). Plaintiff identifies the following "[u]nfair methods of competition and unfair or deceptive acts or practices" in his Complaint:

(B) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(C) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;

\*        \*        \*

(E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

\*        \*        \*

(G) Representing that goods or services are of a particular standard, quality or grade,

or that goods are of a particular style or model if they are of another;

\*      \*      \*

    (I)   Advertising goods or services with intent not to sell them as advertised;

\*      \*      \*

    (L)   Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

    (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby[.]

Because it is alleged that an affirmative misrepresentation is the basis for some of Plaintiff's claims, he "must prove that the deceptive act or practice caused him or her to enter into the transaction that resulted in his or her damages." §46A-6-106(b). What is more, because Plaintiff is seeking to recover damages for a violation of this article which alleges " the concealment or omission of information" is the basis for certain claims, then he must prove that his "loss was proximately caused by the concealment or omission." In addition, plaintiff must prove that he "suffered an actual out-of-pocket loss that was proximately caused by a violation of this article." §46A-6-106(b).

Notwithstanding subsections (a) and (b), no action may be brought pursuant to §46A-6-106 "until the person has informed the seller or lessor in writing and by certified mail, return receipt

requested, of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation but ten days in the case a cause of action has already been filed to make a cure offer[.]"

## V.

### Brief Summary of Material Facts and Theories of Liability or Defense

Plaintiff:

Plaintiff contends that Defendants had a duty to his son Evan Harris to keep and maintain his safety while he was a participant in the Journey WV Program. Plaintiff has identified his allegations in a 10-Count Complaint, which each count requiring similar types of proof.

Count One contends that Defendants intentionally inflicted emotional distress upon Plaintiff by their reckless and wrongful conduct caused the beneficiaries to suffer extreme emotional distress, all of which was foreseeable to them.

Count Two contends that Defendants negligently performed assessments on Evan Harris to determine if he was even a proper candidate for the program and to determine if the program was in any way beneficial to him once he arrived. Plaintiff contends that Kevin Fenstermacher, Ph.D. made recommendations to the Defendants to follow, which would have assisted them in providing proper assessments to Evan Harris, but that the Defendants did not follow them.

Count Three contends that Defendants failed to properly supervise the Evan Harris while he was a participant in the program, which provided the means and opportunity for him to commit suicide. Plaintiff also contends that Defendants knew that program participants were in danger based upon an earlier suicide that occurred a little more than a month before.

Count Four contends that Defendants failed to exercise reasonable care in hiring people to provide for care and treatment of program participants and that they lacked proper credentials

to provide the care and treatment that Evan Harris needed in this case.

Count Five contends that Defendants did not properly train their staff members in order to provide proper care, treatment and supervision of the program participants.

Count Six contends that Defendants did not properly staff their programs so as to provide sufficient people to properly provide services for, care and supervise the participants.

Count Seven contends that Defendants create their programs to provide proper services to participants like Evan M. Harris.

Count Eight contends that Defendants negligent in performing assessments of Evan Harris once he was in the program. Defendants represented to people like Plaintiff that their programs were successful, but Defendants failed to point out that they were not performing any assessments to determine the effectiveness of the programs.

Count Nine contends that the Defendants misrepresented the effectiveness of their programs. Plaintiff had a psychological evaluation performed for his son prior to his program participation, but Defendants did not ever follow the recommendations of the evaluator. Plaintiff contends that Defendants were either negligent in their actions in reporting what was happening to their son.

Count Ten contends that they lied to the Harrises about their son's condition and that they had lied about the death of the other program participant.

Count Eleven contends that Defendants engaged in violations of the Act by misrepresenting the services that they were going to provide to Plaintiff's son while he was a program participant in exchange for the money that he was spending on his care and treatment. Defendant:

22

Q&A Associates, Inc. is a program based in Davis, West Virginia for young adults who have struggled to transition to independent living. Specifically, the Journey program is for young men to provide a supportive environment where they may learn real life skills. After moving from many other institutions and programs, at the age of 23 Evan Harris joined the Journey Program at Q&A Associates on November 19, 2015. During Evan's time at Q&A Associates, Inc., Evan was assessed, provided employment at a restaurant, provided with life skill coaching, given access to counseling, and encouraged and coached to make positive decisions in his daily life. Unfortunately, on January 24, 2016, Evan Harris was found deceased of an apparent suicide. This instant case stems from Evan Harris's participation in the Q&A Associates, Inc. program and his ensuing death. The instant Complaint was filed against Q&A Associates, Inc. and various individuals employed or contracted with the Q&A program.

The Plaintiff has asserted the following claims against the Defendants:

- Count I—Intentional Infliction of Emotional Distress;

- Count II—Negligence in Performing Assessment of Evan M. Harris;

- Count III—Negligent Supervision of Program Participants;

- Count IV—Negligent Hiring of Staff;

- Count V—Negligent Training of Staff;

- Count VI—Negligent Staffing Levels;

- Count VII—Negligent Program Design;

- Count VIII—Negligent Program Assessments;

- Count IX—Negligent Misrepresentations of Facts;

- Count X—Intentional Misrepresentation of Fact; and

- Count XI—Violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA").

These Defendants deny these allegations and claims and will present evidence and testimony to rebut these allegations. Defendants deny that they were negligent in their assessment or interactions with Evan Harris. The Defendants further deny that they caused or contributed to the suicide of Evan Harris. Furthermore, the Defendants deny that the Plaintiff can present a claim against them under the West Virginia Consumer Credit and Protection Act.

## VI.

### Contested Issues of Fact

Plaintiff:

Plaintiff contends that the following facts are uncontroverted:

a.   Q & A Associates, Inc. was established as a for-profit facility in the troubled teen and young adults industry by the individual Defendants. In addition to troubled teens, Defendants claim to be able to assist young adults who need assistance due to intellectual or emotional immaturity.

b.   Due to Evan M. Harris's cognitive abilities, he was operating at a level of a young teen, despite his age, which was well-known by the officers and employees of Q & A Associates, Inc.

c.   The troubled teen and young adult industry is largely unregulated and highly deceptive in the types and quality of programs and services that are being offered to its participants.

d.   Angela Shockley, as President of Q & A Associates, Inc. announced on November 30, 2010 that she was opening a facility in Davis, West Virginia, which purportedly provides services to troubled teens and young adults.

e.   In the announcement, Angela Shockley stated that she has worked in the industry for many years as the Director of Alldredge Academy and as a Regional Director at Eckerd Youth Alternatives, where she was responsible for the development of the Private Programming Division.

f.   Alldredge Academy was also located in Tucker County, West Virginia. Defendant Shockley was aware that at least one death by suicide had been reported at that

facility and was aware that the young man who killed himself had asked his counselor to take away his knife before he hurt himself again.

g.    Angela Shockley, Keith Bishop and others on the management team at Q & A Associates, Inc. had previously worked at other facilities where troubled teens had died by suicide and others were abused by staff and other residents within the facility.

h.    Defendants were all uniquely aware of the problems associated with the types of programs they were offering and that suicides at these types of facilities were common.

i.    Defendants, their employees and their colleagues travel around the country falsely representing the quality of their programs, the training of their staff, and the alleged success they have to parents, educators and others so as to convince parents to enroll their kids and young adults in these programs.

j.    Q & A Associates, Inc. is not a healthcare facility, nor is it licensed to provide medical care of any kind.

k.    Q & A Associates, Inc. is not a mental health facility, nor is it licensed to provide mental healthcare services of any kind.

l.    Q & A Associates, Inc. is not licensed by any entity of the state or federal government.

m.    Q & A Associates, Inc. has structured itself to avoid being regulated in the State of West Virginia, much like others in the troubled teen and young adult industry.

n.    In November of 2015, Q & A Associates, Inc. offered three programs, Applewood Transitions, The Journey WV and Cabin Mountain Living to persons like Evan M. Harris.

o.    Prior to his participation in the program, Q & A Associates, Inc.'s personnel required Evan M. Harris to undergo a complete psychological evaluation, which revealed a myriad of emotional and psychological needs that Evan M. Harris required be met for his success in any program.

p.    The psychological evaluation provided a listing of medications and why Evan M. Harris was prescribed them.

q.    The author of the psychological evaluation, Kevin Fenstermacher, Ph.D. made it very clear that Evan M. Harris required consistent efforts to take his medications.

r.    The author of the psychological evaluation made it clear that Evan M. Harris needed to take his medications as prescribed.

s.    The psychological evaluation revealed a number of medical conditions and psychiatric disorders that Evan M. Harris was dealing with and had been for years.

t.    The psychological evaluation revealed that Evan M. Harris was intellectually limited, impulsive and he had a troubled past which required him to be closely monitored, supervised, and encouraged in order to progress

u.    The psychological evaluation detailed previous self-injurious behaviors and suicidal statements when Evan M. Harris was not coping well.

v.    The psychological evaluation stated that Evan M. Harris had been dealing with substance and addiction issues that needed to be addressed during his participation in the program.

w.    The psychological evaluation detailed the requirement that Evan M. Harris be closely followed by a psychiatrist, Paul Pelts, M.D.

x.    The psychological evaluation was provided to personnel of Q & A Associates, Inc. whose staff promptly reported that Evan M. Harris was accepted into the program.

y.    Evan M. Harris was enrolled as a participant in Q & A Associates, Inc.'s program called The Journey WV. According to the information provided by its website and its advertisements, The Journey WV program provides:

Our clients often struggle with recurring issues from adolescence, causing difficulties in transitioning effectively to independence. Many of our clients have participated in numerous forms of therapy, but have struggled translating what they have learned to real life. Supported and guided by Certified Life Coaches and mentors, clients are presented with real life situations on a daily basis. This provides opportunities for them to have genuine experiences rather than contrived outcomes…All of our clients are engaged in some level of academic, vocational or training program. Some of our clients have not been able to complete high school due to extenuating circumstances, so we offer the opportunity to complete a high school diploma through National High School, which requires a combination of online and book/paper work. We provide individual tutoring as needed. We also work with Eastern WV Technical and Community College where our clients can take college level courses in a variety of vocational areas or take entry-level core courses as they prepare to attend a four-year college or university. Some of our clients complete online courses in an Ed-To-Go program, which provides a certificate of completion. Our clients are permitted to take a Certified Nurse Assistant (CNA) course through our local assisted living program. We also work with local professionals to provide apprenticeship opportunities as appropriate.  These areas can include electrician, farrier, construction, cable TV, phone, Internet line work, and mechanic.

26

z.      the officers and staff members of Q & A Associates, Inc. assured Friedrichs Harris and Kathleen Harris that their son would be safe.

aa.     On November 19, 2015, Evan M. Harris came to Davis, West Virginia to participate in The Journey WV program.

bb.     According to the program materials, he was to be engaged in some level of academic, vocational or training program. Evan M. Harris was never engaged in any academic, vocational or training program of any kind. Instead of academic, vocational or training program participation, as advertised, Evan M. Harris was made to wash dishes at The Deerfield Inn Restaurant, which is owned by Matthew Shockley and Angela Shockley, as well as dishwashing at a coffee shop called The Nook, as other participants in the program were required to do.

cc.     When Evan M. Harris's parents questioned their son's working at The Deerfield Inn, they were told that he needed to have a job and that was what was available to him.

dd.     Instead of meeting the psychological needs of Evan M. Harris, as outlined in the psychological evaluation, officers and staff members watched Evan M. Harris deteriorate physically and emotionally, while assuring his parents that Evan M. Harris was "doing great".

ee.     As is documented by the records maintained by Q & A Associates, Inc. early on in the program, Evan M. Harris was expressing a desire to leave the facility and return home or to a previous program he had attended.

ff.     On December 3, 2015, Evan M. Harris packed up his belongings and left the facility, only to be found and quickly returned to the facility, and which was not immediately reported to Evan's parents.

gg.     As early as December 24, 2015, Keith Bishop was receiving reports that Evan M. Harris was cutting his arm and was expressing suicidal ideations over a breakup with a female participant in the program, which went unreported to Evan's parents. On that same date, Q & A staff members were told that Evan M. Harris was regularly purging, which was not immediately reported to Evan's parents. Purging would limit the absorption of his medications and was indicative of underlying disorders that Q & A staff members were ignoring.

hh.     On January 12, 2016, Evan M. Harris borrowed money from Sandy Schmiedeknecht to buy cigarettes. He left the store and walked to the bank where he withdrew money and used it to purchase a bottle of Jack Daniels whisky. Instead of alerting Evan's parents of this behavior, it went unreported.

ii.     On January 14, 2016, Angela Shockley was supposedly going to the farm to speak with Evan Harris, but they were unable to locate him and had to conduct a search to find him. He was subsequently found and returned to the facility.

jj.     On January 18, 2016, Evan M. Harris again left the facility. He was found walking along Cortland Road in Tucker County by Angela Shockley after he had again gone missing.

kk.     On January 23, 2016, Evan M. Harris expressed a strong desire to drink alcohol and was provided counseling by Mark Shockley about addiction and he offered to take him to AA meetings.

ll.     On January 24, 2016, Evan M. Harris committed suicide by hanging in the barn on the premises of the Defendant.

mm.    During this same time period that Evan M. Harris's emotional condition was deteriorating, he began refusing to take his medicine and it was discovered that he was not taking his medications as prescribed.

nn.     The psychological report required by Q & A Associates, Inc. made it clear that taking his medications was critical for Evan M. Harris and his mental stability. Instead of regularly reporting the continuing deterioration of Evan M. Harris's condition to his parents, Q & A Associates, Inc.'s officers and employees began a systematic effort to limit his communications with them.

oo.     As is documented in the corporate records of Q & A Associates, Inc., members of the management team and the staff encouraged Friedrichs Harris and Kathleen Harris to limit or end communications with their son early on in the program. When Evan Harris's communications with his parents did not end, as is documented in the corporate records of Q & A Associates, Inc., the "seed" was planted in the mind of his parents to discontinue the cellphone service that Evan M. Harris had so that communications with his parents would be limited to the one call per week, which members of the staff at Q & A Associates, Inc. closely monitored and participated. Initially, Evan M. Harris's mother Kathleen Harris resisted the efforts of Q & A Associate, Inc.'s staff to turn off her son's cellphone, but she was told that the cellphone was interfering with his progress and that she was merely enabling her son's refusal to become an adult and to be self-sufficient. In an effort to resist cutting off communication with her son, Kathleen Harris told members of the staff that it was a difficult process to discontinue the cellphone service, which is clearly documented in the corporate records relating to Evan M. Harris's participation in the program.

pp.     After more coaxing and finally a demand from Q & A Associates, Inc.'s staff, Kathleen Harris discontinued her son's cellphone service.

qq.    As is documented in the corporate records relating to Evan M. Harris's participation in the program, Evan M. Harris's condition was deteriorating.

rr.    The records demonstrate that Evan M. Harris was not taking his medications that he needed to treat his bipolar disorder and other medical conditions, which went unreported to Evan Harris's parents. He was engaging in destructive behavior, including purging, cutting and substance abuse.

ss.    On the days leading up to Evan M. Harris's suicide, Q & A Associates, Inc. was aware of his deteriorating condition, addiction issues, his impulsivity, and Q & A Associates, Inc.'s own notes reflect that Evan M. Harris refused to do his chores and refused to eat meals with his housemates.

tt.    On December 21, 2015, John Doe, another participant in the program and a housemate of Evan M. Harris, died from hanging himself in the barn on Q & A Associates, Inc.'s premises. John Doe had been missing from the community house in which he stayed for several hours before anyone had noticed he was missing. When another program participant went looking for him, he was found hanging in the barn.

uu.    Evan M. Harris and other program participants knew that John Doe had committed suicide by hanging in the barn, but Q & A Associates, Inc. told Kathleen Harris that John Doe's death was a tragic accident, but that additional details could not be revealed out of concern for the privacy rights of the parents of the deceased.

vv.    While the privacy rights of the parents was a legitimate concern, the nature of John Doe's death was a matter of public record, which Defendants chose to keep from parents of other participants in the program, even though the program participants like Evan M. Harris knew that John Doe had committed suicide.


Defendant:

1.    Whether the Defendants were negligent and whether the Defendants' negligence caused the suicide of Evan Harris.


## VII.

### Proposed Stipulations

No stipulations have been reached at this time, but the parties will work to stipulate to certain facts and the admissibility of certain documents.

*VIII.*

### *Suggestions For The Avoidance of Unnecessary Proof*

See section VI.

*IX.*

### *Special Procedures*

Defendant Tammy Robbins will be beginning her clinical residency in neuropsychology on July 26, 2018. The Defendants request that the Court accommodate Ms. Robbins to testify either on July 24 or 25 or by video conference. Ms. Robbins' clinical residency will otherwise be greatly prejudiced should she be unable to participate in the first week.

*X.*
### *Statement of Damages*

<u>Plaintiff:</u>

a.    Plaintiff contends that the Estate is entitled to the recover for the conduct of the Defendants in causing the death of Evan M. Harris. Plaintiff seeks compensatory damages for the death of Evan M. Harris for sorrow, mental anguish, and solace, which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent which Plaintiff contends will be valued by a jury in this case. Plaintiff believes that a reasonable jury may award damages in the amount of $3,000,000.00 to the beneficiaries of the Estate of Evan M. Harris;

b.    Compensation for loss of services, protection, care and assistance provided by Evan M. Harris in an amount of $1,000,000.00 to the beneficiaries of the Estate of Evan M. Harris.

c.    Pain, suffering and mental anguish of Evan M. Harris prior to his death in an amount of $1,000,000.00 to the beneficiaries of the Estate of Evan M. Harris.

d.    Punitive damages in accordance with <u>West Virginia Code</u> §55-7-27, which permits Plaintiff to recover at least $500,000.00 in punitive damages or four times the compensatory damages, whichever is less.

Defendants:  None.

*XI.*

***Trial Days***

Plaintiff anticipates the trial will take a minimum of 10 days.

The Defendants believe that the trial of this matter will take 7-10 days.

***XII.***

***Other Relevant Matters***

None at this time.

None at this time.

JOINTLY SUBMITTED,

By Counsel,

/s/ Lindsey M. Saad
Lindsey M. Saad (WV Bar No. 11155)
John T. McCartney (WV Bar No. 12242)
FLAHERTY SENSABAUGH BONASSO PLLC
48 Donley Street, Suite 501
Morgantown, WV 26501
(304) 598-0788
(304) 598-0720 (fax)
lsaad@flahertylegal.com
jmccartney@flahertylegal.com

and

Thomas V. Flaherty (WV Bar No. 1213)
FLAHERTY SENSABAUGH BONASSO PLLC
200 Capitol Street
P.O. Box 3843
Charleston, WV 25338
(304) 345-0200
(304) 345-0260 (fax)

tflaherty@flahertylegal.com

/s/ David A Sims
David A. Sims, Esq.
Law Offices of David A. Sims, PLLC
P.O. Box 5349
Vienna, WV 26105

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA AT ELKINS**

**FRIEDRICHS HARRIS, ADMINISTRATOR OF
THE ESTATE OF EVAN M. HARRIS,**

      **Plaintiff,**

**v.**                               **CIVIL ACTION NO.: 2:16-cv-00046
JUDGE BAILEY**

**Q&A ASSOCIATES, INC., A WEST VIRGINIA
CORPORATION, ANGELA SHOCKLEY, KEITH
BISHOP, MATTHEW SHOCKLEY, AND SANDY
SCHMIEDEKNECHT,  and TAMMY ROBBINS,**

      **Defendants.**

## CERTIFICATE OF SERVICE

I certify that on this 25th day of June, 2018, I filed electronically via CM/ECF a true copy of "**JOINT PRETRIAL ORDER**" with notice of the same being electronically served by the Court, addressed to the following:

> David A. Sims, Esq.
> Law Offices of David A. Sims, PLLC
> P.O. Box 5349
> Vienna, WV 26105

> /s/ Lindsey M. Saad
> Lindsey M. Saad (WV Bar No. 11155)